ELIZABETH B. MAHER *et al.*

*v.*

JESSIE R. MAHER.

*Opinion filed October 25, 1899—Rehearing denied December 19, 1899.*

EVIDENCE—*when presumption of marriage arising from cohabitation is rebutted.* The presumption of marriage arising from cohabitation and repute is rebutted where the woman thereafter abandons the man, resumes her maiden name, does not look to him for support or hold communication with him, and he subsequently is actually married to another woman.

| | |
|---|---|
| 183 | 61 |
| 96a | 66 |
| 96a | 68 |
| 183 | 61 |
| s204 | 26 |
| 108a | 382 |
| 183 | 61 |
| e210 | 162 |
| 112a | 257 |

APPEAL from the Circuit Court of Cook county; the Hon. CHARLES G. NEELEY, Judge, presiding.

Mark H. Maher died intestate on February 1, 1896, leaving an estate, real and personal, in Cook county, which was of the value of about $100,000. . On the sixth day of February, 1896, Alzuma L. Maher filed a petition in the probate court of Cook county, alleging she was the lawful widow of the deceased, and was married to him on or about the 25th day of June, 1892, and that they lived together as husband and wife until 1895. On the 27th day of February, 1896, Elizabeth B. Maher filed a petition, alleging her marriage to Mark H. Maher in December, 1895, and that she lived with him until the time of his death. On January 28, 1897, Jessie R. Maher (*nee* Kean) filed a petition in said court, in which it was alleged that from about the first day of April, 1884, to the date of his death, she had been the lawful wife of the deceased and was his lawful widow. On the 27th day of February, 1896, letters of administration were issued on said estate to the Title Guaranty and Trust Company, as administrator. Answers were filed to these various petitions, and upon a hearing an order was entered in April, 1897, finding that Jessie R. Maher was the lawful widow of the deceased, Mark H. Maher, and directing the administrator to pay to her the sum of $500 as her distributive share in the said estate,

It is not controverted that Mark H. Maher died leaving no children or descendants of any child or children, but leaving brothers and sisters and the three petitioners, who claim, respectively, to be his wives. It appears that on January 27, 1895, he obtained a decree for divorce from Alzuma L., who insists that such decree was fraudulently obtained and denies that it was valid.

From the order entered directing the payment of $500 to Jessie R. Kean, as the lawful widow of the deceased, three several appeals were prosecuted,—one by Alzuma L. Maher, one by Elizabeth Maher, and a third by Ellen A. Jarvis, a sister of the deceased, who has died since her appeal to the circuit court. The death of Ellen A. Jarvis having been suggested in the circuit court, her executor, Walter S. Maher, entered his appearance and was substituted as party to the record. On the 14th of April, 1897, on the appeal so taken to the circuit court of Cook county, the order of the probate court of Cook county, directing the payment of $500 to Jessie R. on account of her distributive share in the estate of Mark H. Maher, was affirmed, and from that order of affirmance Elizabeth B. Maher and Alzuma L. Maher prosecute an appeal to this court, and error is assigned in finding that Jessie R. had ever been married to Mark H. Maher and that she was his lawful widow, and in refusing to hold propositions of law, and each of them, asked by Alzuma L. Maher and Elizabeth B. Maher.

By a stipulation entered of record the controversy in this case to be determined is as to the status of Jessie R. Kean, and that the order or judgment in this cause shall in no way affect or determine, as between themselves, the rights of Alzuma L. Maher and Elizabeth B. Maher.

M. F. RIGGLE, and JAMES B. MUIR, (SHOPE, MATHIS & BARRETT, of counsel,) for appellant Elizabeth B. Maher.

CREWS & CREWS, and JAMES E. PURNELL, for appellant Alzuma L. Maher.

FRANCIS W. WALKER, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

The only question to be determined in this case is whether Jessie R. Kean became and was the common law wife of Mark H. Maher, for if such relation exists as a valid contract of marriage, she became and was his widow, and his subsequent marriages were invalid.

There is no evidence in the record to show that a marriage ceremony was ever performed between Jessie R. Kean and Mark H. Maher. It appears that in the spring of 1884 Jessie R., who was living with her parents in the city of Washington and was employed as a clerk in the treasury department, and who was of age, left the city of Washington with Maher, who was a clerk in the printing department and who was also of age. Prior thereto Maher and Jessie R. had been acquainted for nearly two years, and during their acquaintance, as testified to by the mother of Jessie R., Maher asked her consent to his marriage with her daughter, which she said she refused. Shortly after their departure from the city of Washington they made their home in the city of Chicago, where they took rooms together and to the world were apparently husband and wife. Maher introduced her as his wife to proprietors of grocery stores and butcher shops, to an attending physician who was called in, and to sisters in a hospital to which she was taken when she was ill, and also to others. Subsequently they removed to the city of Minneapolis, where again they kept house, and where Jessie R. consulted a physician, and it appears from his testimony that she made statements as to the condition of her husband with reference to being afflicted with a loathsome disease, and sought advice as to how she was to prevent contagion, and threatened to leave him; and here, too, she was introduced by Maher as his wife. After spending a few

months in Minneapolis they left that city and went to
the Black Hills, where they remained until about 1890,
when she left him, returned to the city of Washington
and sought and again received employment in the treas-
ury department. At the time of soliciting this latter
appointment certain questions in writing were submitted
to her, which were answered in writing, and she gave her
name as Jessie R. Kean, and in response to the question
whether married or single, answered that she was single,
and whilst there is some conflict in the testimony as to
the name by which she was known in the city of Wash-
ington after her return thereto, it is not difficult to see
that she was known as Jessie R. Kean. Shortly after
her return to the city of Washington Maher returned to
and made his home in the city of Chicago, and in June,
1892, married Alzuma L. at St. Joseph, Michigan, and con-
tinued to live with her for about two years. During this
time he was living in the city of Chicago, and in 1893,
during the period of the World's Fair, Jessie R. Kean,
her sister and her mother were visitors to the World's
Fair, and there the mother learned of the marriage of
Maher to Alzuma L., but there is no evidence in the rec-
ord showing that that knowledge was communicated to
Jessie R., nor is there anything to show any inquiry on
her part, during the time of her visit to Chicago, as to
Maher in any way, and she returned to her duties in the
city of Washington. Whilst Jessie R. was at the hos-
pital in the city of Chicago, where she remained six or
eight weeks, she was frequently visited by Maher, and
on two occasions he stayed all night in her room. One
of the sisters, who had for forty-eight years been a mem-
ber of the order, was an aunt of Maher, and during the
time that Jessie R. was there it was suggested that she
be married by a priest, and the ceremony of baptism was
performed preparatory to that event and the date set on
which the marriage was to take place, but Maher did not
appear on that occasion nor was the ceremony of mar-

riage ever there performed. The evidence fails to disclose that at any time during the period when Maher and Jessie R. were living together he ever introduced her to any member of his family as his wife. The claim on her part to be the lawful widow of Maher rests on the foregoing evidence.

Under the frequent adjudications of this court a marriage legal at common law has been recognized as legal and binding in this State. To constitute a marriage legal at common law the contract and consent must be *per verba de presenti*, or if made *per verba de futuro cum copula*, the *copula* is presumed to have been allowed on the faith of the marriage promise, and that so the parties, at the time of the *copula*, accepted of each other as man and wife. *Port* v. *Port*, 70 Ill. 484; *Hebblethwaite* v. *Hepworth*, 98 id. 126; *Cartwright* v. *McGown*, 121 id. 388; *Stoltz* v. *Doering*, 112 id. 234; *Hiler* v. *People*, 156 id. 511.

It is not sufficient to agree to present cohabitation and a future marriage when more convenient. *Robertson* v. *State*, 42 Me. 509; *Duncan* v. *Duncan*, 10 Ohio St. 182; *Beverson* v. *Beverson*, 47 Cal. 621; *Fryer* v. *Fryer*, Rich. Eq. 85.

Where parties have contracted a common law marriage without any solemnization or other formality, apart from the agreement itself, it is not requisite that the agreement should be made before witnesses. (*Cheney* v. *Arnold*, 15 N. Y. 230.) But such a marriage is to be distinguished from cases of seduction or sexual intercourse followed by a promise of marriage, and cases where the intercourse in its inception is illicit, and is known to be such by both parties. *Cheney* v. *Arnold, supra; Duncan* v. *Duncan, supra*.

No actual marriage in fact being proven between Jessie R. Kean and Mark H. Maher, but the simple fact disclosed being that they lived together as husband and wife and that the deceased spoke of and introduced her as such, only the repute was created that they were husband and wife. Cohabitation and repute are sometimes

adequate evidence from which the marriage is presumed. The manner in which persons living together as husband and wife are received among their friends and neighbors, and their reputation and declarations, are shadows attending on cohabitation and should be simultaneous therewith. 1 Bishop on Marriage and Divorce, sec. 939.

A presumption of marriage increases with the lapse of time the parties cohabit as husband and wife. The relation claimed to exist by Jessie R. Kean, as set forth by her in her petition and as found by the circuit court, is a relation springing from the fact of cohabitation, with its attendant shadows. She ceased relations with Maher in 1890. No correspondence is shown to have passed between them since that time. No inquiry made with reference to him appears from the evidence during her visit to Chicago during the World's Fair, and from 1890 to his death there was no cohabitation or attendant shadows. Her representation that she was single, and her declaration as to her maiden name being her name, are absolutely inconsistent with the idea that the marriage relation existed between them. There is no evidence that she sought to require him to aid in her support, or that she regarded him in any way as liable for her support, or as her husband, during a period of more than six years. Such being her conduct and actions and such her declarations, commencing with 1890, after she ceased all relations with him, he contracted an actual marriage, duly solemnized with Alzuma L. Reeves on June 25, 1892.

Cohabitation and repute do not alone constitute the marriage, as that can only depend on the mutual consent of the parties. The recognition of the marriage relation by the parties themselves and by friends and relatives, together with their declarations and conduct in holding themselves out as husband and wife, being the mere manifestations that the parties have consented to contract that relation between them, causes those facts to only raise a presumption of the actual contract having been

made between the parties. A presumption of that character may be overcome by other presumptions which spring from the acts of the parties themselves during the time of cohabitation, as well as from acts and declarations and conduct springing from their acts after cohabitation between them has ceased. The taking of her maiden name by the woman; her declaration that she is a single woman; her being introduced as a single woman under her maiden name; the fact of making no inquiry as to the man with whom she had formerly cohabited, when in the same city where he resided, are all facts which tend to raise a presumption as to the manner in which she regarded the relation that existed between herself and the person with whom she formerly cohabited, and the fact that she does not look to him for support and maintenance, nor request his aid in that behalf, nor show any cause why there was a cessation of the relations between them, will raise a like presumption.

These facts show the presumptions which must necessarily arise from her conduct, acts and declarations. Maher's declarations that he was divorced from Jessie R. Kean, (which declarations were made to persons who were formerly told by him that she was his wife,) and the fact that within two years after she deserted him he was united in marriage with another woman, which marriage was duly solemnized, afford a presumption as to the manner in which he regarded the relations which had existed between himself and Jessie R. Kean. Taking into consideration the presumptions which spring from all these facts and circumstances, we are impressed with the belief that neither of these parties regarded themselves as actually married, but that their relations were merely meretricious and unlawful. *Chamberlain* v. *Chamberlain*, 71 N. Y. 423; *Senser* v. *Boyer*, 1 Pa. 452; *Jackson* v. *Claw*, 18 Johns. 346.

In *Weatherford* v. *Weatherford*, 20 Ala. 548, it was held: "There is no proof of actual marriage according to the

Indian customs, and the presumption of an actual marriage from the fact of cohabitation is rebutted by the fact of a subsequent permanent separation without any apparent cause, and the marriage, in solemn form, of Weatherford to Mary Stiggins, which took place shortly after the separation." In *Moore* v. *Heinicke*, 24 So. Rep. 374, the Supreme Court of Alabama held: "The weight of authority  *  *  *  supports the proposition that the presumption of an actual marriage from the fact of continued cohabitation, etc., is rebutted by the fact of a subsequent permanent separation without apparent cause and the actual marriage soon after of one of the parties." See, also, Bishop on Marriage and Divorce, 446.

The hearing was had by the chancellor on the transcript of the evidence taken before the probate court, so that his observation of the witnesses was no greater than ours.

From a careful examination of the facts appearing in this record, together with the authorities cited by counsel, we are of opinion that the probate court and the circuit court of Cook county were each in error in holding that Jessie R. Kean was the lawful widow of Mark H. Maher. The judgment of each of those courts is reversed and the cause is remanded.      *Reversed and remanded.*