# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

204   25
s210  162
s210  163
s210  165
204   25
115a 206

*In re* ESTATE OF MARK H. MAHER, Deceased.

*Opinion filed June 16, 1903—Rehearing denied October 23, 1903.*

1. APPEALS AND ERRORS—*additional evidence is admissible upon a general remandment.* If the remandment of a cause upon reversal is general, without qualifications or directions, the cause stands for hearing as it did originally, and any competent evidence is admissible to prove the issues.

2. SAME—*the rules of law and decisions of fact announced in opinion govern, although remandment is general.* The rules of law and the decisions upon matters of fact then in the record, announced in the Supreme Court's opinion upon reversing a judgment, govern the second hearing, even though the remandment is general.

3. SAME—*question for decision on second appeal.* If a cause is reversed upon its merits and remanded generally, the question for determination upon appeal from the decree rendered upon the second hearing is whether the new evidence introduced is sufficient to support the decree.

4. MARRIAGE—*what essential to common law marriage.* To constitute a legal marriage at common law the contract and consent must be *per verba de presenti*, or if made *per verba de futuro cum copula,* the *copula* must have been allowed upon the faith of the marriage promise as an acceptance of each other as man and wife.

5. SAME—*presumptions arising from cohabitation may be overcome by other presumptions.* The presumption of marriage arising from cohabitation and marriage relations may be overcome by other pre-

sumptions springing from the acts and declarations of the parties after cohabitation between them has ceased.

6. SAME—*what not sufficient to show a common law marriage.* Proof that the alleged husband spoke of and addressed the other party as his wife, and that he drew checks in her name as his wife, is not sufficient to show a common law marriage, as against evidence showing the relation between them to be adulterous, and known by both of them to be such.

APPEAL from the Circuit Court of Cook county; the Hon. R. W. HILSCHER, Judge, presiding.

SETH F. CREWS, and RALPH CREWS, (GEORGE W. BROWN, of counsel,) for appellant Alzuma L. Maher.

MILLARD F. RIGGLE, and JAMES B. MUIR, (SHOPE, MATHIS, ZANE & WEBER, of counsel,) for appellant Elizabeth B. Maher.

FRANCIS W. WALKER, and ALBERT G. WELCH, (A. M. PENCE, of counsel,) for appellee, Jessie R. Maher.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The only question involved in this case is whether a common law marriage was legally contracted between Jessie R. Kean and Mark H. Maher, and whether such marriage existed at the time of his death, on February 1, 1896, whereby she became his lawful widow. A former decree of the circuit court of Cook county deciding that question in her favor was reversed by this court at a former term, upon the ground that the evidence failed to sustain the decree. The order of reversal and remandment at that time was general. Subsequently the case was re-docketed in said circuit court and additional evidence heard, whereupon the finding and decree were again in favor of the appellee, Jessie R. Kean, or as she claims to be, Jessie R. Maher. A statement of the facts of the case will be found in and preceding the opinion rendered upon the former hearing and reported in 183 Ill. 61. Elizabeth B. Maher and others again appeal from the latter decree.

It is first insisted on behalf of appellants that the chancellor erred in admitting additional evidence upon the second hearing, the position being, that the former decision of this court is *res judicata* as to the question involved. That position is not tenable. The remandment being without qualification, the cause stood for hearing precisely as it did originally. (*Henderson* v. *Harness*, 184 Ill. 520, and cases cited; *Aurora and Geneva Railway Co.* v. *Harvey*, 178 id. 477.) It was therefore proper to admit any and all competent testimony tending to prove or disprove the issue.

It was stipulated upon the last hearing that the evidence of witnesses heard on the former trial, as shown by the transcript of the record and by depositions and documentary evidence then introduced, might be re-introduced by either party upon the latter hearing, subject to objections as to its competency. It was further stipulated that Mark H. Maher died at his domicil in the city of Chicago, seized of real estate and personal property in the county of Cook, and that he left neither child, children nor descendants of a child or children him surviving; that no record of any proceeding for divorce between said deceased and appellee existed in any court "of St. Paul or Minneapolis, Minn., Washington, D. C., Buffalo, N. Y., or Chicago, Ill., or in any court within whose jurisdiction said respective cities are located;" also, "that nothing contained in said stipulation shall be construed as an admission that a marriage existed between the petitioner and Mark H. Maher."

While the cause was open for a rehearing generally upon the evidence in the court below, on the remandment from this court the conclusions announced in our former decision as to matters of fact then in the record and the principles of law applicable to and governing the cause upon those facts as the record then disclosed, were binding upon the chancellor upon his final decision of the cause. The rule is, that upon the remandment of a cause

generally, the rules of law applicable to the case announced in the opinion of this court are conclusive upon the second hearing. (*Newberry* v. *Blatchford*, 106 Ill. 584; *Dilworth* v. *Curts*, 139 id. 508.) The question, then, for our determination must be, is the new evidence now in the record, together with that which was before us upon the former hearing, construed as we then construed it, sufficient to sustain the present decree? In other words, is it sufficient to establish the relation of husband and wife between Jessie R. and Mark H. Maher, and entitle her to succeed to so much of his estate as by the statute passes to the widow of the deceased husband leaving no child, children or descendants of such him surviving?

After a patient re-consideration of the case, and giving due consideration to all the additional facts adduced upon the second hearing, we are unable to see upon what principle or logic the second decree of the circuit court, —that is, the one now before us,—can be sustained without overruling our former decision. It was then said, as it is now, that there was at no time a marriage ceremony solemnized between the parties, the sole claim being that the relation of husband and wife was created between Jessie R. Kean and Mark H. Maher by reason of their having lived and cohabited together as husband and wife under such circumstances as to create a valid common law marriage. We held in the former decision of this case, in conformity with the previous decisions of this and other courts, that "to constitute a marriage legal at common law the contract and consent must be *per verba de presenti*, or if made *per verba de futuro cum copula*, the *copula* is presumed to have been allowed on the faith of the marriage promise, and that so the parties, at the time of the *copula*, accepted of each other as man and wife. (*Port* v. *Port*, 70 Ill. 484; *Hebblethwaite* v. *Hepworth*, 98 id. 126; *Cartwright* v. *McGown*, 121 id. 388; *Stoltz* v. *Doering*, 112 id. 234; *Hiler* v. *People*, 156 id. 511.) It is not sufficient to agree to present cohabitation and a future marriage

when more convenient. (*Robertson* v. *State*, 42 Me. 509; *Duncan* v. *Duncan*, 10 Ohio St. 182; *Beverson* v. *Beverson*, 47 Cal. 621; *Fryer* v. *Fryer*, Rich. Eq. 85.) Where parties have contracted a common law marriage, without any solemnization or other formality apart from the agreement itself, it is not requisite that the agreement should be made before witnesses. (*Cheney* v. *Arnold*, 15 N. Y. 230.) But such a marriage is to be distinguished from cases of seduction or sexual intercourse followed by a promise of marriage, and cases where the intercourse in its inception is illicit and is known to be such by both parties.— *Cheney* v. *Arnold*, *supra; Duncan* v. *Duncan*, *supra*."

The additional testimony introduced upon the present hearing, like that previously introduced, wholly fails to show that there was a present agreement between the parties to live together as husband and wife, or that they cohabited together on the faith of a marriage contract, so that they at any time accepted each other as man and wife. Such latter testimony establishes no independent, distinct fact necessary to constitute a common law marriage not established, or which the evidence did not tend to establish, on the former hearing. In other words, the additional evidence is merely corroborative of that which was previously introduced. The effect of the former decision was to hold that while cohabitation and reputed marriage relations between the parties at the several places of their residence would raise the presumption that a marriage contract had been entered into between them, we there held that "a presumption of that character may be overcome by other presumptions which spring from the acts of the parties themselves during the time of cohabitation, as well as from acts and declarations and conduct springing from their acts after cohabitation between them has ceased," and that the facts disclosed by this record did overcome any presumption of a marriage contract honestly and fairly entered into between the parties. The significant fact in reaching that con-

clusion was the unexplained conduct of appellee at the time and after she left Maher, in June, 1890, and returned to the home of her mother in Washington, D. C., and at no time thereafter resuming or attempting to resume the relation of or to be known or recognized as his wife. He soon after the separation returned to Chicago, where he continued to reside until his death, nearly six years thereafter. He was possessed of a considerable amount of wealth, amply able to provide for her every want, and yet during all that time she remained at the home of her mother, and supported herself by employment in her mother's store or in one of the departments of the government; also, that during that time she made a written application for employment in her maiden name, stating that she was unmarried. She came with her mother, in 1893, to Chicago, where Maher was then living with Alzuma L., with whom he had been regularly married in 1892, which fact was at least known to her mother if not to her, and yet, having completed their visit in that city, they returned to the city of Washington, where she resumed her duties as clerk in the treasury department as an unmarried woman, under her maiden name. These facts, with others, were then regarded as conclusively showing that she did not pretend to be the wife of Mark H. Maher, and that the previous relations which had existed between him and her were not matrimonial. The additional testimony in the record in no way tends to explain her conduct during that time, but, at most, merely explains why she left him,—that is, because he had contracted a loathsome disease. And even that reason for leaving him was known by her to exist long prior to the separation, as disclosed in our former opinion. Her abandonment of him because of his diseased condition, however, would in no way tend to prove that their relations had been matrimonial rather than adulterous.

It may be conceded that the evidence in the record now and upon the former hearing shows that the parties

held themselves out to the world, on different occasions and at different places, as husband and wife, and that they resorted to devices for the purpose of misleading others into the belief that they were husband and wife, such as the presentation of the ring mentioned by the mother of Jessie R., with the inscription, "From Mark to Jessie—Mizpah," and which she says her daughter wore until the death of Maher; but certainly it will not be seriously claimed that a common law marriage can be made to rest upon the misconduct of a man and woman in holding themselves out to the world as being married. Also the evidence tending to show that Mark H. Maher called her by the name of Mrs. Jessie Maher, and that he drew checks to her in that name, is not at all inconsistent with what seems to us, as shown by an overwhelming weight of testimony, to be a living with her in a state of adultery and not as her husband,—which fact was fully understood and appreciated by her. The evidence in this record is voluminous. To attempt a discussion of it in detail would be futile. An impartial reading of it must lead the candid mind to the conclusion that her relation to him from the time they left Washington, and perhaps prior thereto, until she finally separated from him, was nothing more or less than meretricious, and that their living and cohabiting together, as between themselves, was known to be adulterous. His conduct was doubtless the more wicked and reprehensible, but neither the law nor public policy will permit the converting of such relations into the sacred relation of husband and wife.

Under the foregoing rules of law the decree of the circuit court is in our opinion unsupported by the testimony, and it will be reversed and the cause remanded, with directions to proceed in conformity with the views herein expressed.                *Reversed and remanded.*