# James G. Evans v. Effie W. Woodsworth, et al.

## Gen. No. 11,454.

1. **Res adjudicata**—*when defense of, should be interposed.* The defense of *res adjudicata* should be interposed in the proceeding claimed to be barred by reason thereof, and cannot be relied upon by way of bill in the nature of a bill of review.

2. **Res adjudicata**—*when defense of, not established.* The claim that the matter in controversy has been determined in another case between the same parties is not established unless it is made to appear that in the two cases there was identity of issues.

3. **Res adjudicata**—*when parol evidence competent to defeat claim of.* When the averments of a pleading upon which a judgment is based are general and it is claimed that such judgment or decree is *res adjudicata* in the second proceeding between the same parties, evidence of what was actually decided in the first is admissible and necessary to determine, in case it is questioned, whether the former decree or judgment is *res adjudicata.*

4. **Divorce**—*when decree of, will not be set aside upon bill to impeach it for fraud.* Such a decree will not be set aside where it appears that the party in whose favor such decree is granted is dead, the rights of minors have intervened, and the complainant in the bill to review has been guilty of laches.

Bill to impeach decree for fraud. Appeal from the Circuit Court of Cook County; the Hon. Edward O. Brown, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed July 14, 1904.

**Statement by the Court.** Appellant married one Isabelle Campbell, a widow, May 31, 1884, and lived with her as her husband until the year 1890 or early part of 1891. March 20, 1893, his said wife filed a bill against appellant in the Superior Court for divorce, charging him with desertion and extreme and repeated cruelty. She made affidavit that appellant was not a resident of Illinois, that his place of residence was unknown, and upon diligent inquiry could not be ascertained. Service was had by publication in that case, appellant defaulted, but on the hearing in May, 1893, the court dismissed the bill without costs. Thereafter, on September 27, 1893, appellant's wife filed another bill in the Circuit Court, which was substantially a

copy of the bill filed in the Superior Court, and she also in the latter court filed an affidavit that appellant could not, on due inquiry, be found, that his present place of residence could not be ascertained, and his last place of residence was in the city of San Francisco, California. Service was had in this latter case by publication. Appellant defaulted, and on a hearing of the evidence the court rendered a decree finding him guilty of desertion as charged in the bill, and granting a divorce to his wife. After making a will devising her property to the appellee Effie W. Woodsworth, and in the event of the latter's death to the two minor daughters of the latter, the appellees Florida B. and Effie W. Woodsworth, Mrs. Evans died on August 10, 1894. June 4, 1896, appellant filed this bill, which was subsequently amended, setting up the matters above stated, and charging in substance that the affidavit of non-residence filed in the Superior Court was false and fraudulent, and made for the purpose of imposing upon that court and giving it an apparent and fraudulent jurisdiction; also that the affidavit filed in said Circuit Court was knowingly false and was a fraud perpetrated by his said wife for the purpose of giving that court an apparent and fraudulent jurisdiction, and that said decree of divorce rendered by that court was fraudulent and procured by his said wife's fraud perpetrated upon that court; that it was absolutely null and void and a cloud upon his interests in any estate left by his said wife; also that the charges of desertion in the bill in that case were untrue, and that he was not guilty of any cruelty to his said wife. The amended bill in this case asks that the decree of divorce be set aside and annulled.

A guardian *ad litem* was appointed for the infant defendants, who answered for them, and the other defendants answered in effect denying all fraud charged against Mrs. Evans, admitting the decree of divorce, and calling for strict proof of the allegations of the complainant's amended bill.

After issues made the cause was heard before the chancellor upon evidence oral and documentary offered in open

court, and on November 8, 1897, the court having thereto-
fore substantially decided the merits of the controversy,
the appellant presented a draft of certain further amend-
ments to the bill for the purpose, as he claimed, of making
the pleadings conform to the evidence in the case, where-
upon the court referred the cause to a master in chancery
" to examine such evidence and said amendments and re-
port to the court if the said amendments in substance con-
form to the evidence offered and received on.said hearing."
These proposed amendments for the first time set up and
claim that the decree in the Superior Court was *res judicata*
as to the said decree of divorce in the Circuit Court, and
therefore that the latter decree was void.

Subsequently, on the coming in of the master's report,
to which objections had been overruled, the court, being
another chancellor, who did not hear the cause originally,
on December 22, 1902, overruled exceptions thereto and ap-
proved the master's report, which was in substance a report
upon the whole issues in the cause, and found that the al-
legations in the proposed amendments of appellant were
not supported by the evidence heard before the court. The
chancellor, at the same time, ordered that the motion of
appellant for leave to file the amendment to the amended
bill be and the same was denied. Thereafter on June 15,
1903, the cause came on for hearing before the same chan-
cellor who heard the evidence in 1897, upon the pleadings
and proofs heard in open court, and he dismissed the
amended bill for want of equity. From that decree this
appeal is prosecuted.

Thereafter, and after the filing of the original record in
this cause, still another chancellor permitted, on motion of
appellant, the record to be amended so as to show that ap-
pellant's said proposed amendment to the amended bill be
filed on November 2, 1903, *nunc pro tunc* as of November
8, 1897.

D. H. STAPP and JOHN M. HESS, for appellant; A. N.
WATERMAN, of counsel.

Evans v. Woodsworth.

WHARTON PLUMMER and GEORGE W. PLUMMER, for appellees.

MR. JUSTICE WINDES delivered the opinion of the court.

For appellant the claim is made that the decree of the Superior Court under the bill filed for divorce in that court is *res judicata*, and for that reason the decree of the Circuit Court sought to be set aside by the bill in this case, is a nullity. There are two reasons why, in our opinion, this position is not tenable. First, *res judicata*, in order to be availed of, should have been set up as a defense to the bill in the Circuit Court and there established. Gerber v. Gerber, 155 Ill. 219. In fact, this claim is entirely inconsistent with the theory of complainant until after the case had been heard and decided by the chancellor. Appellant's whole contention on the trial seems to have been that the Superior Court was without jurisdiction because of the alleged fraud in the affidavit of non-residence. Second, the evidence in the record fails to show that the same question and the same evidence was passed upon in the Superior Court as was considered by the Circuit Court. The evidence in neither of the cases appears in this record, and we cannot tell whether the Superior Court had evidence before it on the question of appellant's desertion of his wife, or of extreme and repeated cruelty, or both. It may be if there was evidence of desertion, that it was insufficient, because the lapse of time between the time of the desertion and filing of the bill was not long enough to fulfill the requirements of the statute. It is also a significant fact that the decree in the Superior Court is not one of dismissal for want of equity, but is simply a dismissal without costs. In the absence of the evidence in that case we cannot say that the decree rendered by the Superior Court may not have been as suggested, or on the charge of cruelty. In either event, it would not be *res judicata* in the second case. When the averments of a pleading on which a judgment or decree is based are general, and it is claimed that such judgment or decree is *res judicata* in a second proceeding between the same parties, evidence of what was actually

decided on the first is admissible and necessary to determine, in case it is questioned, whether the former decree or judgment is *res judicata.* Wright v. Griffey, 147 Ill. 496–500; Leopold v. City, 150 Ill. 568–75; *Re* Estate of Maher, 204 Ill. 25–7.

The substance of the only remaining contention made by appellant's counsel is that Mrs. Evans was guilty of a fraud in making the affidavit of non-residence in each of the cases for divorce, and especially in procuring the decree in the Circuit Court against appellant for desertion, when she must have known that there was no basis for her claim in that regard. We have carefully read and considered the evidence bearing upon this claim of fraud, and cannot reach the conclusion that the chancellor was clearly and manifestly wrong in dismissing appellant's bill for want of equity. It is true there is evidence in the record from a consideration of which appellant's contention is not without some basis, but we think it insufficient to justify us in interfering with the decree. The evidence of Mrs. Stowell, a witness for appellant, is to the effect in substance that she knew Mr. and Mrs. Evans in the year 1892, and saw them both at their home during that summer, and also at a funeral of a brother-in-law of Mr. Evans in June, 1892; also that she saw Mr. Evans at his place of business near South Park station, just outside of the World's Fair grounds, in Chicago, before the close of the fair, which was the last of October, 1893, and that after seeing him there she saw Mrs. Evans and mentioned the fact to her, and Mrs. Evans said that she knew it—that a Mrs. Nelson who lived with her had told her. There is other evidence of the same nature from other witnesses. All that these witnesses testified to might have been true, and still Mrs. Evans may not have been guilty of any fraud in the respects claimed. Mr. Evans may have been in the same house with Mrs. Evans in the year 1892, and still have been guilty of deserting her. He may have been at his place of business in Chicago during the World's Fair, and his wife may have known it at the time when she made the affida-

vit of non-residence in the Circuit Court, and she may not have known it. That he was in Chicago at that time and she knew it is by no means conclusive that she knew that he resided in Chicago. The affidavit in that case was made in September, 1893, whereas the witnesses, so far as appears from their evidence, may have seen him at a later date. One of appellant's witnesses, the Mrs. Nelson above referred to, testifies that she and Mrs. Evans were the best of friends and she was often at Mrs. Evans' home in 1892, but did not see Mr. Evans there; that she was at the funeral of the relative referred to, but there was no conversation between Mr. and Mrs. Evans at the funeral—that Mr. Evans did not go from the funeral to Mrs. Evans' house, and that she did not see him at this house in a year previous to the funeral; that between August 20 and September 1, 1893, Mrs. Evans went to Nebraska and remained there three or four weeks. Another of appellant's witnesses, Mr. Gairns, his nephew, testified on cross-examination that he met Mrs. Evans the latter part of September, 1893, and told her that he had met Mr. Evans in July and the latter had told witness that he, Evans, was going to San Francisco to live—that " San Francisco is where I told her he had gone; " also that he met Evans in October, 1893, and witness said to him, " I saw that Mrs. Evans had entered a decree for a divorce, he saying ' I know it, and I will let her get it, as she hasn't been a wife to me for two years.' " In view of this and other evidence in the record, we think there was not that clear proof of fraud on the part of Mrs. Evans as would have justified the chancellor in annulling the decree of divorce. It is elementary that fraud must be proved by the party alleging it, and it should be clearly established, especially in a case such as this, where it is claimed the fraud was perpetrated by a person who had died after the alleged fraud was committed and before the hearing.

In Shinn v. Shinn, 91 Ill. 477–86, the court said, in speaking of the sufficiency of evidence to prove an allegation of fraud: " The evidence must be clear and cogent and must

eave the mind well satisfied that the allegation is true."
To the same effect are Dexter v. McAfee, 163 Ill. 508;
Schumacher v. Bell, 164 Ill. 181–4, and Hand v. Waddell,
167 Ill. 402–9. Moreover, we are of opinion that appellant
should be denied the relief here sought because of his
laches, the death of Mrs. Evans and the fact that the inter-
est of minors has intervened. Zoeilner v. Zoellner, 46 Mich.
511–14; Whittaker v. Whittaker, 151 Ill. 266–72. The
evidence shows that appellant knew of the filing of the Cir-
cuit Court bill by his wife before the rendition of the de-
cree of divorce in that court, and expressed himself as not
averse to her obtaining such a decree. The evidence also
shows without contradiction—in fact appellant admits it—
that he knew as early as February, 1894, that his wife had
obtained a decree of divorce against him, and took no steps
whatever during her lifetime (she died in the following
August) to set it aside, as he might have done under section
19 of the Chancery Act. He, however, failed to do this,
and delayed the filing of the bill in this case until almost
two years after Mrs. Evans' death. These facts without
explanation are, in our opinion, sufficient to justify a denial
of any relief to appellant. It is claimed that he should not
be barred of relief because of this delay, from the fact that
he did not know of the alleged fraud prior to the filing of
the bill. Appellant knew of the decree of divorce long be-
fore his wife's death, and testifies that when he was told
she had filed a bill for divorce he said "there was no court
in the land that would grant her a divorce if she would tell
the truth." In view of this testimony it cannot be said
that, if Mrs. Evans was guilty of fraud in procuring a di-
vorce, Mr. Evans did not know it, or at least did not have
such knowledge as would naturally lead him to a discovery
of the alleged fraud. He, of all persons, knew whether she
had any grounds for a divorce. In all probability this suit
would never have been begun had Mrs. Evans lived. He
should, considering the knowledge he had and his delay in
asserting his alleged rights, be denied any relief. No such
clear proof of fraud is shown as calls for the interposition

of equity on grounds of public policy, to protect the courts or the public from imposition.

Other details of the evidence and contentions of counsel need not be mentioned, since in our opinion they are not important, and what has been said disposes of the merits of this appeal.

The decree of the Circuit Court is affirmed.

*Affirmed.*