## In re Petition of Grace M. Saunders, filed in Proceedings in the Estate of James Saunders, Deceased. Grace M. Saunders, Appellant, v. Marian B. Saunders, Appellee.

## Gen. No. 7,743.

1. WITNESSES—*competency of witness to testify to her alleged marriage to decedent.* Under Cahill's St. ch. 51, ¶ 2, providing no one interested shall testify in his own behalf against the representative, heir or devisee of an estate, a petitioner cannot testify in regard to her alleged marriage to the decedent of an estate in her effort to be declared his widow, as against one already declared widow and administratrix and her descendants, irrespective of whether or not there are collateral heirs.

2. EVIDENCE—*admissibility of marriage certificate to prove marriage.* An alleged marriage certificate is not admissible to show marriage in the absence of evidence as to its identity and as to its execution or authenticity.

3. PROBATE COURTS—*jurisdiction of circuit court on appeal from county court in heirship proceedings.* On appeal from the county court's refusal to declare petitioner the widow of a decedent and to reopen heirship proceedings, the circuit court must try the case *de novo,* and has no power to affirm, reverse or remand the cause.

4. APPEAL AND ERROR—*what Appellate Court will consider on appeal from circuit court judgment in heirship proceeding appealed from the county court.* The Appellate Court will consider only the judgment of the circuit court, on proper issue there formed, upon heirship proceedings appealed to it from the county court and not any alleged error in the latter court.

5. EVIDENCE—*admissibility of deeds to show marriage.* Deeds, introduced in heirship proceedings to show petitioner is the widow of a decedent, which show persons of the same names as she and decedent to be husband and wife are not admissible without evidence of the identity of the parties.

6. MARRIAGE—*what does not prove common law.* A showing that a man and woman lived together in the same room, and that a man of the same name but not identified as the same, made deeds in which the woman was named as his wife, does not prove a common-law marriage in face of proof that later both parties entered into ceremonial marriages with other persons.

Appeal by plaintiff from the Circuit Court of DuPage county; the Hon. MAZZINI SLUSSER, Judge, presiding. Heard in this court at the October term, 1924. Affirmed. Opinion filed September 24, 1927.

EDWARD J. KELLEY and HENRY J. GIBBS, for appellant.

CHARLES W. HADLEY and JOHN W. LEEDLE, for appellee.

MR. PRESIDING JUSTICE JETT delivered the opinion of the court.

Dr. James Saunders died in DuPage county, Illinois, May 19, 1921, leaving a last will and testament in which his wife, Marian B. Saunders, was named as executrix. The will was admitted to probate. The

wife qualified as executrix and filed an inventory. The county court found that the testator left surviving him, his widow, Marian B. Saunders, one son, and several grandchildren. On July 3, 1923, appellant, who styled herself as Grace M. Saunders, filed her petition in the county court, in which she alleged that on October 31, 1899, a marriage was contracted between her and James Saunders, "as she remembers in the city of Milwaukee, county of Milwaukee, and State of Wisconsin, and that while she believes that she is the widow of the said James Saunders," her name has been omitted from the proof of heirship, and she prayed that the order determining the heirship be vacated and set aside, and that other proof of heirship be taken, and an order entered finding that she is the widow of James Saunders. There was a hearing on the petition and it was dismissed for want of proof and equity. Appellant prosecuted an appeal to the circuit court and the petition was again dismissed. A further appeal was prosecuted to this court.

On the trial in the circuit court appellant took the stand for the purpose of testifying to the facts relative to her alleged marriage with Saunders and the subsequent relations between them. An objection was sustained to her competency as a witness and this ruling is assigned as error.

Section 2, chapter 51, of the statute provides, in substance, that no party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion, or in his own behalf, when any adverse party sues or defends as the executor, administrator, heir, legatee, or devisee of any deceased person, unless when called as a witness by such adverse party so suing or defending. Cahill's St. ch. 51, ¶ 2.

Appellant contends that this proceeding was not a contest between the heirs of James Saunders; that it could not diminish the estate in any way; that it was

a contest between appellant and appellee, Marian B. Saunders, to determine who was the lawful widow entitled to the widow's share of the estate, therefore, this section of the statute does not apply.

This exact question has been before the Supreme Court on several occasions. In *Laurence v. Laurence,* 164 Ill. 367, a bill for partition was filed by an alleged widow against the heirs of the deceased, who died leaving no direct issue. The complainant claimed to be entitled to one-half of the real estate and all of the personal estate. The trial court permitted her to testify over the objection of defendants and entered a decree finding that she was the lawful wife of Laurence at the time of his death. The cause was appealed and appellants challenged the ruling of the court in permitting the alleged widow to testify to the facts of marriage, and to other facts tending to show that the marriage relation existed. The court reviewed all of the prior decisions upon that question up to that date, and on page 373 announced the rule as follows: "The rule to be deduced from those cases is, that where, among those who are conceded to be the heirs, there arises a controversy as to the distribution of the estate among them, they may testify, as such testimony does not tend to reduce or impair the estate among them. Appellee was not an heir until she established the marriage which she alleged and which was denied by the heirs, and until such marriage was established by proof or conceded, she was a stranger to the estate and incompetent to testify, and the court erred in permitting her to do so, over appellants' objection."

In *Re Maher's Estate* was before the Supreme Court on three occasions: 183 Ill. 61; 204 Ill. 25; 210 Ill. 160. Maher died intestate leaving only collateral heirs. Jessie R. Maher filed her petition in which she claimed to have been the legal wife of the deceased from April 1, 1884, for a period of about thirteen years; that he left a valuable estate, and prayed that

the administrator be ordered to pay her $500 on her distributive share. Two other women, each claiming to be the widow of the deceased, appeared and resisted the petition. The administrator filed an answer neither admitting nor denying the allegations of the petition but stating that the deceased left minor heirs not represented except through the administrator. The probate court entered an order as prayed in the petition and an appeal was prosecuted to the circuit court. In each of the trials in the circuit court, the testimony of Jessie R. Maher was excluded on the ground that she was not a competent witness. On the last appeal to the Supreme Court all of the prior decisions were reviewed, and in 210 Ill. on page 170, the rule is announced as follows: ''We therefore hold that a woman claiming to be the lawful widow of a dead man, whose claim in that regard is denied by others who have interests, or assert interests, as heirs, in his estate, is incompetent to testify to the fact of her marriage in a proceeding in which she seeks, as distributee, a portion of all of his personal property, until her status as such widow has been conceded or has been established by the adjudication of a court having jurisdiction of the subject.''

Other cases might be cited announcing the same rule, but as they are referred to in the two cases above cited, it will not be necessary to consider them. The only possible distinction between these cases cited and the one at bar is that in each of them there were only collateral heirs, while in this case there are no collateral heirs. We know of no good reason why the rule should be applied in one case and not be applied in the other, and we are of the opinion that the same rules apply whether there are collateral heirs as whether there are no collateral heirs. Under these authorities, appellant was not a competent witness to testify to the facts relative to the marriage, or to the

subsequent relations of the parties, and the court properly sustained the objection to her testimony.

Appellant offered in evidence a written instrument purporting to be a marriage certificate showing her marriage to Saunders. It was dated October 31, 1898, at Milwaukee, Wisconsin, and was signed by B. Henry Kreutmeyer, Jr., Pastor, and by two witnesses. Objection was sustained to this instrument and this ruling is assigned as error. There was no evidence as to its identity, and in the absence of any evidence as to its execution or authenticity, the objection to it was properly sustained. *Tucker v. People,* 117 Ill. 88.

In the county court, in the original hearing to establish the heirship, appellee, Marian B. Saunders, was permitted to testify. No answer was filed to the petition of appellant. In the circuit court, an answer was filed to the petition by Marian B. Saunders, and several of the legatees under the will filed their appearances and were represented at the hearing. Appellant insists that there was no issue joined in the county court, therefore, there was no issue to be tried and the proceeding was a nullity; that if appellee was permitted to testify in the county court relative to her marriage to Saunders, then appellant should have been permitted to testify to that fact in the circuit court.

When appellant filed her petition in the county court she saw fit to go to trial without an answer having been filed. The real question was as to the truth of the allegations of her petition. When that question was decided against her she appealed to the circuit court. The trial in the circuit court was a trial *de novo.* The circuit court was without jurisdiction to affirm or reverse the judgment of the county court, or to remand the cause to the county court for further action. The sole duty of the circuit court was to try the case the same as if it had never been tried before. *Snell v. Weldon,* 162 Ill. App. 11; *American Surety Co. of New*

*York v. Sperry,* 171 Ill. App. 56.  It was from the judgment of the circuit court that this appeal was prosecuted, and the correctness of that judgment is the only question for review in this court.  Proper issues were formed in the circuit court and there was no error in this respect.  Even if it be conceded that the county court improperly permitted appellee to testify, which question we do not pass upon, appellant is in no position to review in this court the alleged erroneous ruling on evidence.  The will expressly stated that Marian B. Saunders was the beloved wife of the deceased, and left a part of the estate to her.  At the time she testified in the county court there was no contest over the question as to her being the widow of the deceased.

The remaining question is whether the evidence was sufficient to establish a marriage either ceremonial or at common law.  Appellant in her petition alleged that she was married to Saunders October 31, 1899, at Milwaukee, Wisconsin.  The marriage certificate that she attempted to offer in evidence certified that the ceremony was on October 31, 1898.  After appellant's evidence was excluded there was no evidence even tending to show that a marriage ceremony was ever performed.  If there was no legal proof of a ceremony, the question is whether the facts and circumstances in evidence were sufficient to establish a marriage.  The evidence shows that in 1898, Saunders lived in Glen Ellyn, in DuPage county, and had lived there for some time, and continued to live there until the date of his death.  Appellant had been married to a man by the name of Matthews, who died in 1889.  For a time she lived in Chicago, but in 1898 lived in Glen Ellyn.  On February 26, 1902, while she resided in Glen Ellyn, she was married to Daniel R. Lawrence.  She was afterwards known as Grace M. Lawrence.  They moved to Chicago where they lived for several

years. In 1921, Lawrence obtained a divorce from appellant in Wisconsin.

Mary E. Matthews, a daughter of appellant, testified that in 1898, Saunders lived at their home in Chicago, and, while living there, Saunders and her mother occupied the same bedroom. Shortly afterwards they moved to Glen Ellyn, and appellant and Saunders occupied the same room at Glen Ellyn; that Saunders resided with appellant but a short time at Glen Ellyn; that she and her mother lived in Glen Ellyn for about seven years; that it was in Glen Ellyn that witness first met Lawrence, and he came to live at their house while they were living in the King house. After that her family moved back to Chicago where Lawrence and her mother resided.

William F. Matthews, son of appellant, testified that he first met Saunders at 431 West Lake Street, Chicago, in 1898; that Saunders and his mother, while living in Chicago, occupied the same room; that the witness lived at Glen Ellyn with his mother for six months, or possibly a year. He did not know how long Saunders lived with his mother at Glen Ellyn. He knew of the marriage of his mother and Lawrence but he did not remember the date. After the marriage appellant went by the name of Lawrence. The last time the witness saw Saunders was when the witness left Glen Ellyn which was about six months or a year after he first went there. His mother and Lawrence lived together in Chicago for a while.

Appellant offered in evidence a deed dated March 11, 1901, conveying certain real estate to Grace M. Saunders. An objection was sustained to this offer and we think properly so for the reason that it was not properly identified and had no apparent connection with James Saunders. Appellant also offered in evidence certified copies of two deeds, one dated January 17, 1900, in which the grantors, James Saunders, M. D. and Grace M. Saunders, his wife, of Glen Ellyn,

conveyed certain real estate to Amelia Loy and Thomas J. Lewis. The other deed was dated March 4, 1901, and recited that the grantors, Grace M. Saunders, formerly Grace M. Matthews, and James Saunders, her husband, conveyed certain real estate in Chicago to Sarah Slage.

This is practically all of the evidence which tends to show the relations which existed between appellant and Saunders upon which appellant seeks to establish her marriage. The petition is based upon the allegation that a marriage ceremony was performed and there is no evidence that sustains such a contention. Appellant claims that the evidence shows a common-law marriage. The rules with reference to a common-law marriage are well understood and it will not be necessary to go into detail with reference to them. There is practically no evidence which shows that Saunders ever held appellant out as his wife. If the evidence does not come within the rules of law with reference to common-law marriages then appellant is not entitled to the relief sought. The mere fact that the parties may have lived together, either in Chicago or in Glen Ellyn, and occupied the same room, is not sufficient to establish a common-law marriage. There is no evidence tending to show that the James Saunders mentioned in the two deeds offered in evidence was the testator in this case, but we are asked to hold that these two deeds, without any evidence as to the identity of the parties, are sufficient to establish the fact that Saunders recognized appellant as his wife. If it is true that appellant was the wife of Saunders, then when she married Lawrence in 1902, she became a bigamist, and she continued as his wife until 1921, when her husband secured a divorce from her. On October 28, 1905, Saunders was married to appellee, Marian B. Saunders, and continued to live with her until the time of his death in 1921. During a part of this time both appellant and Saunders lived in Glen

Ellyn, she living with her husband Lawrence, and he living with his wife, the appellee. During the time she lived with Lawrence appellant certainly did not make any claim to being the wife of Saunders, and there is no evidence that Saunders during that time ever recognized her as his wife.

Under all the evidence we are of the opinion that it entirely fails to show that appellant was the wife of Saunders, the circuit court correctly so found, and the judgment will be affirmed.

*Judgment affirmed.*