210    160
213    ²401

## *In re* Estate of Mark H. Maher.

*Opinion filed June 23, 1904.*

1. Appeals and errors—*effect of remandment with specific directions.* A specific direction, on remandment by the Supreme Court, "to proceed in conformity with the views expressed," limits the power of the trial court to the entry of final judgment if the Supreme Court decided the issues involved upon their merits; but if the issues were not determined, a re-trial may be had notwithstanding such direction, and evidence offered by either party which falls within the principles announced must be received.

2. Same—*what finding does not preclude receiving additional evidence.* A finding by the Supreme Court, in its opinion, that the presumption of marriage raised by the proof was overcome by the evidence raising a contrary presumption, does not preclude, on re-trial, the introduction of evidence tending to show a contract of marriage, notwithstanding the cause was remanded with directions to proceed in conformity with the views expressed in the opinion, there being no finding against the fact of marriage.

3. Witnesses—*when alleged widow cannot testify to marriage.* A woman whose claim as being the lawful widow is denied by others

having or asserting interests, as heirs, in the estate of her alleged husband, is incompetent to testify to the fact of her marriage in a proceeding in which she seeks, as distributee, a portion of all his personal property, until her status as a widow has been established by the adjudication of a competent court.

APPEAL from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

FRANCIS W. WALKER, A. M. PENCE, and ALBERT G. WELCH, (PENCE & CARPENTER, of counsel,) for Jessie R. Maher.

S. P. SHOPE, and MUIR & RIGGLE, for the Chicago Title and Trust Co., Admr., and Elizabeth B. Maher.

CREWS & CREWS, and GEORGE W. BROWN, for Alzuma L. Maher.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The appellant, who avers that she is Jessie R. Maher, under that name filed her petition on January 28, 1897, in the matter of the estate of Mark H. Maher, deceased, in the probate court of Cook county, Illinois, averring that Mark H. Maher died intestate; that she had been his legal wife from about the first day of April, 1884, to the time of his death; that he left no descendants but did leave certain collateral heirs, and left a valuable estate consisting of real and personal property, a part of which is real estate located in this State, and praying that the court order the administrator to pay her the sum of $500 to apply on her distributive share of that estate. Two other women, who appear in the suit by the names of Elizabeth B. Maher and Alzuma L. Maher, each claiming to have been the wife of Mark H. Maher at the time of his death, appeared and resisted the petition. The administrator filed an answer neither admitting nor denying the averments of the petition, but stating that the deceased left minor heirs not represented except through

210—11

said administrator, and asking that strict proof be required. The probate court entered an order in accordance with the prayer of the petition, whereupon Elizabeth B. and Alzuma L. each appealed to the circuit court of Cook county. Since that time the case has been tried in the circuit court and a decree entered finding that Jessie R. was the wife of Mark H. Maher at the time of his decease. An appeal was prosecuted to this court, when the decree of the court below was reversed and the cause remanded, and is reported as *Maher* v. *Maher*, 183 Ill. 61, where a statement of the facts may be found. It was again tried in the circuit court and a decree in favor of Jessie R. was entered. It came again to this court on appeal, and the decree of the circuit court was again reversed and the cause remanded, "with directions to proceed in conformity with the views expressed in the opinion of the court herein." (*In re Estate of Maher*, 204 Ill. 25.) Thereafter the cause was re-docketed in the circuit court on November 23, 1903. A motion was made by Elizabeth B., Alzuma L. and the administrator to dismiss the petition of Jessie R. The latter filed her cross motion to place the cause on the trial calendar for re-trial and for leave to introduce further and additional evidence in support of her petition, and particularly for leave to introduce her own testimony. The cross-motion was overruled, the motion to dismiss the original petition was allowed and the petition dismissed, and Jessie R. appeals.

In support of the cross-motion an affidavit was filed showing that on each of the first two trials in the circuit court the testimony of Jessie R. had been offered, and, on objection, excluded on the ground that she was not a competent witness, and showing further that she would testify to a contract entered into between herself and Mark H. Maher in April, 1884, whereby they agreed to take each other as husband and wife, and that in pursuance of such agreement they accepted each other as

such, and thereafter lived and cohabited together as husband and wife for a number of years. This affidavit was stricken from the files by the circuit court. The errors assigned question the action of the court in striking this affidavit and overruling the cross-motion, and in allowing the motion to dismiss.

Alzuma L. claimed to be the wife of Mark H. Maher by virtue of a ceremonial marriage between them at a date subsequent to the cessation of his relations with appellant, and it appears that in his lifetime Maher obtained a divorce dissolving this marriage. Prior to his death Alzuma L. instituted proceedings to have the decree of divorce set aside. Since his death her application for relief of that nature has been denied and she is without any real interest in this controversy.

Elizabeth B. asserts that after the divorce last mentioned was obtained she became the wife of Mark H. Maher by virtue of a ceremonial marriage, and so continued to the time of his death.

In disposing, as it did, of the motion and cross-motion, the circuit court acted on the theory that it could pursue no other course if it was "to proceed in conformity with the views" expressed in the opinion of this court in this case in the 204th Ill., while appellant contends there should have been a re-trial. It is manifest that the words last quoted are in themselves without significance in determining what course should be pursued by the court below. If the suit were a bill to construe a deed, and on appeal to this court a construction was placed upon the writing and a conclusion was reached at variance with that of the circuit court, and the decree was reversed, as in this case, "with directions to proceed in conformity with the views expressed in the opinion of the court herein," the court below would have power to do nothing except enter a final decree, without a further hearing, which should effectuate the construction placed upon the instrument by this court; while if a cause in-

volving an issue of fact should be reversed by this court, with the same directions, for a refusal to admit competent testimony, it would be entirely at large, when re-docketed, and should be re-tried on the merits, the only effect of the judgment of this court being to require the admission of the testimony wrongfully excluded. Appellant's counsel cite a line of cases, beginning with *Chickering* v. *Failes*, 29 Ill. 294, and ending with *Aurora and Geneva Railway Co.* v. *Harvey*, 178 Ill. 477, in support of their proposition that "the decision of this court upon a controverted question of fact is not conclusive where the objection found to the previous recovery is of a character to be obviated by the introduction of new and additional evidence," and it is contended that the reversal of this cause resulted from the fact that there was a hiatus in the evidence on the part of appellant giving the history of her relations with the deceased, between the time she and Maher eloped in the city of Washington and the time when the evidence locates them in Chicago living together apparently as man and wife, and that she now has the right to show that a contract of marriage was entered into between them during that interval. On the other hand, appellees refer us to another line of cases, beginning with *Hollowbush* v. *McConnel*, 12 Ill. 203, and ending with *Bradley* v. *Lightcap*, 201 Ill. 511, in support of their view, which was adopted by the court below, that the final order and mandate of this court was specific, and left nothing, under the pleadings in the case, for the circuit court to do except to enter a decree in favor of the respondents and dismiss the petition. It is impossible, in an opinion of reasonable length, to discuss the cases to which we have been referred on this subject. The only rule of general application deducible therefrom is one as to the existence of which there can be no controversy, and which may be thus stated: Where this court, in considering a cause, determines the issues and decides the questions involved upon their merits, and

the case is reversed and remanded, with directions "to proceed in conformity with the views" expressed in the opinion, there is no power in the court below except to enter a final order or judgment, without a re-trial; but if, on the other hand, the issues are not determined by this court upon their merits, but the case is reversed and remanded with directions above mentioned, a re-trial may be had, when the court below will be governed by the legal principles which have been announced by this court, and evidence offered by either party which falls within the principles so announced must be received.

It is manifest, therefore, that for the purpose of determining whether this court has determined the merits of a question involved in any cause requires an ascertainment of the issues in that cause and an examination of the opinion of this court dealing therewith.  Each case must be determined by the application of the general rule above set forth to the particular questions and issues arising in that case.

Did this court finally determine the issue in this cause by its opinion in the 204th Ill.?  The only issue in the cause is, at the time of Mark H. Maher's death was Jessie R. his wife?—and this resolves itself into a question whether a contract of marriage was ever entered into between Mark H. and Jessie R.

After the case was first reversed and remanded by this court, it was insisted on behalf of the respondents that no additional evidence should be admitted, their position being that the former decision of this court was *res judicata* as to the question involved; but we held that position not tenable, and determined that the court below acted properly in receiving all competent evidence offered on the second trial tending to prove or disprove the merits, and the question decided by this court when the case was here the second time was thus stated: "The question, then, for our determination must be, is the new evidence now in the record, together with that which

was before us upon the former hearing, construed as we then construed it, sufficient to sustain the present decree? In other words, is it sufficient to establish the relation of husband and wife between Jessie R. and Mark H. Maher, and entitle her to succeed to so much of his estate as by the statute passes to the widow of the deceased husband leaving no child, children, or descendants of such, him surviving?" and the final expression of the view of this court in response to the interrogatories above quoted was as follows: "Under the foregoing rules of law the decree of the circuit court is, in our opinion, unsupported by the testimony." There is no finding that Jessie R. and Mark H. Maher never were married or that some woman other than Jessie R. was his wife at the time of his death, consequently that question is still open for determination; but in trying it the circuit court must, of course, be governed by the legal principles which have been announced by this court in this cause. Evidence has been offered heretofore which raised a presumption of the marriage of these parties, Mark H. and Jessie R.; other evidence was offered that raised contrary presumptions, which this court deemed overcame the first presumption. If the evidence in another trial shall give rise only to the same presumptions or merely corroborate that which raises those presumptions, then the views heretofore expressed by this court must control and a decree pass against appellant. If, however, the evidence offered shall disclose a different state of facts, then the law applicable thereto, in so far as those facts materially differ from those disclosed by the record when the case was last before us, must be ascertained by the circuit court from the general body of our laws.

It follows from what we have already said that the issue of fact in this case has not been heretofore adjudicated by this court.

Both parties to this appeal treat the error assigned which assails the action of the court below in denying

the cross-motion and striking the affidavit filed in support thereof from the files, as properly presenting the question whether Jessie R. is a competent witness in the trial of this cause, and her competency has been fully argued here by counsel on both sides of the controversy. At the common law no party in interest was a competent witness. Section 1 of our statute on evidence has removed this disqualification, except that, as provided by section 2, "no party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion or in his own behalf, by virtue of the foregoing section, when any adverse party sues or defends  *  *  *  as the executor, administrator, heir, legatee or devisee of any deceased person."

After the order was made in the probate court, the administrator seems to have regarded the controversy as one among the three women who were each claiming to have been the wife of Mark H. Maher at the time of his death. The administrator did not appeal from the order of the probate court, nor from either of the decrees of the circuit court that were entered in favor of Jessie R. The right asserted by Alzuma L. has been denied by the courts. The status of Elizabeth B. may depend upon the final determination of this litigation. Her present position is precisely the same as that of appellant. Each claims to be the lawful widow of the deceased. The right of neither has been established. They stand on the same footing in this cause.

This was an application for an order of distribution. Appellant first contends that there are no parties to this proceeding in any proper sense; that it is an inquest of heirship *ex parte* in its character and is a proceeding *in rem*, and that the presence of parties to the record resisting the claim of the petitioner and denying that she is the widow of the deceased does not render them adverse parties who "sue or defend," within the contem-

plation of the act. A number of decisions made by courts of last resort in other States are called to our attention which seem to support this position. We think, however, the question is one which may be determined upon our own statute and by reference to cases analogous in character which have been decided by this court. It is further urged that Elizabeth B. is the only real respondent; that as she and petitioner stand on precisely the same basis, they are members of a common class; that the statute does not include them, for the reason that it was passed to protect the estates of deceased persons against the assaults of strangers, and does not apply to a controversy between distributees or persons claiming to be distributees of an intestate estate, and in support of this contention we are referred to *Pigg* v. *Carroll*, 89 Ill. 205, *Mueller* v. *Rebhan*, 94 id. 142, *Kershaw* v. *Kershaw*, 102 id. 307, and *Fleming* v. *Mills*, 182 id. 464. The first two of these are the leading cases on this subject; the others but follow. In *Pigg* v. *Carroll* it was held that in a proceeding for partition of lands between heirs of a common ancestor and for the adjustment of advancements among them, the heirs are competent witnesses for and against each other. In *Mueller* v. *Rebhan, supra*, in discussing the earlier case, it is said that the statute "was intended to protect the estates of deceased persons from the assaults of strangers, and relates to proceedings wherein the decisions sought by the party so testifying would tend to reduce or impair the estate, and does not relate to the relative rights of heirs or devisees as to the distribution of an estate in proceedings by which the estate itself is in no event to be reduced or impaired." These two cases last mentioned, with some others, were considered by this court in the case of *Laurence* v. *Laurence*, 164 Ill. 367, where it was said (p. 373): "The rule to be deduced from these cases is, that where, among those who are conceded to be the heirs, there arises a controversy as to the distribution of the estate among them, they may testify, as

such testimony does not tend to reduce or impair the estate among them." In that case Maria Evans Laurence filed a bill for partition against the heirs-at-law of Henry Laurence, who died intestate without descendants, claiming to have been his wife at the time of his death by virtue of a common law marriage. She was permitted by the *nisi prius* court to testify on the ground that she sued as an heir of the deceased, and that, under the law as laid down in *Pigg* v. *Carroll, supra,* she was competent. This court determined, however, that she was not an heir until she established the marriage which she alleged and which was denied by the heirs, and that until such marriage was established by proof, or conceded, she was a stranger to the estate and incompetent. The same reasoning is followed in *Crumley* v. *Worden,* 201 Ill. 105, which was a bill for partition, where the answer averred that the complainant was not an heir of the deceased owner of the lands. Her right to testify was denied so long as her relation to the estate as an heir was a controverted question.

If the complainant in *Laurence* v. *Laurence, supra,* was a stranger to the estate, then likewise is petitioner here a stranger to this estate. This is not a case where the question is, how shall an estate be distributed? but, to whom shall it be distributed? It is not a contest solely between Elizabeth B. and Jessie R. There is no presumption that Mark H. Maher was ever married. He may have left no widow. He left brothers and sisters and their descendants. The real defendants to this suit are those, other than petitioner, who assert that they are the heirs-at-law, whether they be the brothers and sisters and their descendants solely, or the brothers and sisters and another claiming to be the lawful widow. The person who in this cause seeks to establish the fact that she was the wife of the deceased at the time of his death, if she testify, is testifying against the heirs of the deceased, and to do that she is incompetent. The

theory of the statute is, that as the mouth of the deceased is closed by death, the mouth of the living who asserts a claim against the dead shall be closed by law. In adjusting their rights among themselves, those who are conceded or have been adjudged to be heirs of the deceased may testify each against the other. But a vastly different case is here presented. This petitioner seeks to swear that she is heir, and thereby establish the relation which, when not conceded, must be established by the judgment or decree of a court before she can testify. If she is competent, then any woman with whom a man has illicitly and openly lived and cohabited, both being then unmarried, has it in her power, after his death, to establish the fact that she is his widow by testifying that a contract of marriage was entered into by him with her when they were alone, in pursuance of which the cohabitation occurred, for none can deny her. It is precisely such an evil that the legislature intended to prevent by the enactment of section 2 of the chapter on evidence.

We therefore hold that a woman claiming to be the lawful widow of a dead man, whose claim in that regard is denied by others who have interests, or assert interests, as heirs, in his estate, is incompetent to testify to the fact of her marriage in a proceeding in which she seeks, as distributee, a portion or all of his personal property, until her status as such widow has been conceded or has been established by the adjudication of a court having jurisdiction of the subject.

The decree of the circuit court will be reversed and the cause remanded, with directions to overrule the motion to dismiss the petition of Jessie R. and to re-try the issue upon motion of either party.

*Reversed and remanded, with directions.*