## Flora A. Lunger, Plaintiff in Error, v. Nancy J. Sechrest et al., Defendants in Error.

1. Witnesses, § 149*—*when person claiming heirship incompetent.* In a proceeding by an administrator for the distribution of an estate, a person claiming relationship to deceased as sole heir *held* incompetent to testify, where such relationship had not been established and other parties claimed an interest in the fund.

2. Evidence, § 238*—*when marriage certificate competent on proof of heirship.* In a proceeding for the distribution of an estate, a marriage certificate of a woman claiming heirship *held* admissible for the purpose of identifying her as being of the same name as deceased before her marriage.

3. Evidence, § 289*—*when marriage certificate admissible as ancient writings.* An instrument dated in 1865 and upon its face purporting regularly to be a marriage certificate, *held* to be of a class of writings that owing to its antiquity proves itself, and admissible without further proof.

4. Evidence, § 213*—*when declarations of deceased person as to his kindred admissible.* In a proceeding by an administrator for the distribution of an estate where a party claimed to be an heir of the deceased, refusal of court to permit a witness for such person to testify that the deceased had said that the mother of the party claiming heirship was his sister, *held* error.

5. Trial, § 93*—*effect of general objection to admission of documentary evidence.* A general objection to the admission in evidence of a written instrument raised only the question of its relevancy.

Error to the Circuit Court of Jefferson county; the Hon. William H. Green, Judge, presiding. Heard in this court at the October term, 1913. Reversed and remanded. Opinion filed May 1, 1914.

Robert M. Farthing and Kirby Smith, for plaintiff in error.

Thompson & Thompson and Joel F. Watson, for defendants in error; Albert Watson, of counsel.

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

MR. PRESIDING JUSTICE MCBRIDE delivered the opinion of the court.

On November 15, 1906, Charles D. Cook, a resident of Mt. Vernon, died intestate, seized of real estate, also personal property, amounting to about $6,628.39. G. Gale Gilbert, public administrator, administered upon his estate and upon the settlement thereof gave notice as required by statute to all persons claiming an interest in the estate, or the distribution thereof, to appear and make their claims in the manner provided by law. It further appears that Flora A. Lunger appeared and claimed to be a cousin of the decedent, and his only heir at law; that Nancy J. Sechrest for herself and her nieces and nephews also appeared and claimed to be the sole and only heirs of the deceased and asking that the money be paid to them as his next of kin. Flora A. Lunger claimed that the deceased, Charles D. Cook, was a son of Silas Cook of New York State and that he was partly raised by Doctor Jonathan Stewart, an uncle by marriage; that on account of some difficulty he left New York State and went to Chicago and from thence to Onarga and Watseka, Illinois, and in about the year 1861 or 1862 went from Watseka to Centralia and remained there until about the year 1867, from whence he removed to Mt. Vernon and resided there until the time of his death. She claims that Jacob Cook was the father of Daniel B. Cook and the brother of Silas Cook; that Daniel B. Cook was the father of Flora A. Lunger, the claimant, and that Silas Cook was the father of Charles D. Cook, the decedent, and that she was a cousin of the deceased and entitled to the estate. Nancy J. Sechrest, the other petitioner, claims that the deceased's real name was Charles D. Pickett; that he was born in Virginia, and on account of some difficulty left Virginia and came to Fairfield in about the year 1861 and that after remaining about Fairfield for a while went to Centralia and thence to Mt. Vernon and there remained the balance of his life. She claims that at the time he came

to Fairfield he was there to visit his sister, whose name was Frankie Barton, and that she was the mother of the petitioner Nancy J. Sechrest and grandmother of the coclaimants with Mrs. Sechrest; that he visited at the home of his sister, Mrs. Barton, and recognized her as such sister, and that she was the niece and her associates were grandnieces and nephews of the deceased, Charles D. Cook, and as such were the only next of kin and entitled to the estate left by him. The case was heard in the County Court and afterwards appealed to the Circuit Court of Jefferson county, and there heard. In the Circuit Court the administrator and The County of Jefferson appeared and defended against the claims of both sets of petitioners. The Circuit Court, after hearing the evidence of the witnesses, decided that none of the petitioners were of kin to the deceased and determined that they were not entitled to any part of the fund in dispute and ordered that the administrator pay the fund, less taxes, to the county treasurer of Jefferson county. Flora A. Lunger prosecutes this writ of error, making all the others party defendants and assigns as error: First. The court erred in refusing to permit plaintiff in error Flora A. Lunger to testify in her own behalf. Second. The court erred in excluding evidence and exhibits offered by plaintiff in error. Third. The court erred in not finding in favor of the plaintiff in error. The other claimants, Nancy J. Sechrest *et al.*, assigned cross-errors, among which was that the court erred in excluding competent evidence offered on behalf of Sechrest *et al.* and admitting improper evidence.

It is contended by plaintiff in error, Flora A. Lunger, that the court erred in refusing to permit her to testify because of her alleged incompetency. We have examined the several authorities referred to by the respective parties upon this question and believe that the court properly held that she was interested in the result; that the administrator was a party; that Mrs. Sechrest *et al.*, who were parties, were claiming an in-

terest in this fund; that she had not established her heirship and we believe that she was clearly incompetent as a witness, under the holdings of the Supreme Court in *In re Maher's Estate*, 210 Ill. 160 and *Laurence v. Laurence*, 164 Ill. 367 and other authorities cited therein.

The next error complained of is the refusal of the court to admit her marriage certificate in evidence. This instrument bore date of September 28, 1865, and upon its face purports regularly to be a marriage certificate and was in the possession of Mrs. Lunger who offered to introduce it in evidence; that it was material in identifying her as being of the name of Cook before her marriage to Lunger; that it was of that class of writings that owing to its antiquity proves itself and should have been admitted without further proof. A further reason why it should not have been excluded is that the objection made to its introduction was a general one and raised only the question of its relevancy. It certainly was relevant to the issues, and if it were sought to object to it for any other reason it should have been made specific. In the case of *Buntain v. Bailey*, 27 Ill. 409, it is said: "This court has so frequently decided that general objections to the instrument of evidence will not be entertained, that it is unnecessary, in this case, to do more than refer to the decisions. To go no further back, the case of *Sargeant v. Kellogg et al.*, 5 Gilm. 281, is understood to hold, that a general objection to the introduction of a certain instrument of evidence simply raises the question of its relevancy." And again, in the case of *Groom v. Parables*, 28 Ill. App. 152, in an opinion delivered by Justice Lacey, in regard to the proof of a marriage register, it is said: "The proof of marriage is sufficiently made. A copy of the parish register in London, England, was properly introduced—it is true against the objection of the appellant—but the objection was only general and not special, and only reached to the competency of the evidence. Such general objec-

tions do not raise the question as to the secondary character of the evidence, such as being a copy, nor does it raise the question as to its authentication. *Buntain v. Bailey*, 27 Ill. 409. It need not be shown by the proof in the first instance that the marriage was in accordance with the laws of England, etc.'' This marriage certificate was material and at least tended to identify the claimant as one of the Cooks and should have been admitted. It is not necessary for us to now determine the effect such admission would have had as owing to some cross-errors that have been assigned, in addition to the above, the case will have to be reversed and remanded for trial, and we will not undertake in any manner to determine the weight of the evidence or the effect that the admission of any of the matters erroneously excluded would have upon the respective claimants and will not embarrass any of them in any manner in another trial.

The defendants in error, Nancy J. Sechrest *et al.*, have assigned as cross-error the refusal of the court to permit the witness, Martha J. Sims, who was testifying in behalf of Nancy J. Sechrest *et al.*, when asked with reference to any statements that the deceased made as to his relationship to Mrs. Barton, the mother of Mrs. Sechrest, in which she answered, ''Yes, sir, he said he was her brother and she called him brother,'' and the court sustained the objection both to the question and the answer. The property here sought to be distributed was of the estate of Charles D. Cook, and it was clearly competent to show what he may have said as to who were the proper persons to receive it. In the case of *Cuddy v. Brown,* 78 Ill. 415, the declarations of the deceased with reference to his kindred were admitted in evidence and approved by the Supreme Court in that case. The testimony offered was at least material, as the witness George Barton testified, giving the names of the brothers and sisters of Frankie Barton Hughes: ''My father married the mother of Nancy J. Sechrest.

Never met Charles D. Pickett; have heard him talked about within the family, by immediate members of the family. My father and his sisters I suppose. His sister married my father. Heard my step-mother talk about it; about where they came from; as I understood it they came from Virginia and their name was Pickett. Heard my father and step-mother talking, and heard him say she had a brother named Charles Pickett that came from Virginia; that he had changed his name and was going by the name of Cook. She was reciting the story. As I understood it he got in some kind of trouble in Virginia and left there and came to Illinois and changed his name. Came to his sister's, my step-mother. I understood he was living in the west part of Wayne county and at Mt. Vernon, that he moved to Mt. Vernon. I never saw him myself." It will be observed that George Barton knew the family history and learned therefrom as he testifies, of Charles D. Pickett coming to Illinois and changing his name and that he was a brother of the mother of Mrs. Sechrest but he never saw Charles D. Cook, hence it was important to identify the deceased as the brother of the mother of Mrs. Sechrest, and the statement offered by the witness that the deceased said that the mother of Mrs. Sechrest was his sister would tend to at least identify her as such sister. We believe that the Circuit Court erred in refusing to hear this testimony offered by Nancy J. Sechrest *et al.* We are of the opinion that the parties should be permitted to again present their claims and evidence to the Circuit Court, and that too without any suggestions from this court as to the weight of the testimony or the claims of either parties, and the judgment of the lower court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*