BRAWLEY, APPELLANT, *v.* THOMAS, ADMR., ET AL.,
APPELLEES.

(No. 493—Decided December 18, 1947.)

*Messrs. Woolley, Rowland & Bridgewater* and
*Messrs. Fogle & Fogle,* for appellant.

*Messrs. Jones & Williams* and *Mr. Foster B. Corn-
well,* for appellees.

METCALF, J.   This appeal on questions of law arises
out of a proceeding in the Probate Court of Athens
county, for the determination of heirship in the estate
of Ted H. Wolf, deceased, therein being administered.

The plaintiff, appellant herein, Mable Brawley, filed
her petition in that court, captioned "Petition to de-
termine heirship," under and by virtue of Section
10509-95 *et seq.,* General Code, against F. L. Thomas,
administrator of the estate of Ted H. Wolf, deceased,
and others, alleging that at the time of the death of the
decedent he was the lawful husband of the plaintiff,
and that she is his surviving spouse and sole heir at
law.

The petition sets forth the inventoried value of the real and personal property in the estate, the appointment of the administrator, the names of the next of kin as given in the application for the appointment, which next of kin as therein set out are made parties defendant, with the statement that they claim interests in the real and personal property by reason thereof.

The prayer of the petition is that the court determine the person or persons entitled to share in the distribution of the estate, the interest therein by them owned and their respective share or shares therein, and for such other orders and relief in the premises as the court may find plaintiff to be entitled.

The defendants answered, admitting the formal allegations of the petition, but denying generally that the plaintiff is the surviving spouse and sole heir at law of the decedent.

On the issue as thus joined, trial was had in the Probate Court resulting in a finding and judgment that plaintiff and decedent were not married, either at common law or otherwise; that plaintiff is not the widow of decedent; and that the heirs at law and next of kin of the decedent are the defendants, Christine Wemmer, Hershel Wolf, Nora Coon and Kathryn Allen. The court thereupon proceeded in the judgment to fix the proportions of the estate to which the parties defendants are entitled.

The only question before the trial court was whether the plaintiff, Mable Brawley, was the common-law wife of Ted H. Wolf, the decedent, at the time of his death on September 11, 1945.

While all the assignments of error have been carefully examined, and the voluminous record has been read with the same in mind, it will be necessary in this

opinion to discuss only the ones on which the merits of the appeal depend.

In May 1936, plaintiff, an unmarried woman, went to live in the home of the decedent, an unmarried man, who was then living with his father, a widower, and a bachelor brother in a farm home in Ames township, Athens county. The father died in September of 1937, and the brother deceased a short time thereafter.

Plaintiff continued to live with decedent, Ted H. Wolf, in the farm home until January 1944, when they moved to the village of Amesville in Athens county and both resided in the home of the decedent for a few months when this property was sold by decedent. He then moved into a small house by himself and the plaintiff went to live first in the home of her father and then in what is known as the Morris home. This situation existed with the exception of visits back and forth until decedent's death.

There will be no attempt here to set forth the testimony and evidence offered. There were over 100 witnesses examined in the trial of this case. The testimony of some of the witnesses for plaintiff substantiates in part the necessary elements of a common-law marriage. Many of the defense witnesses testified that plaintiff and the decedent did not have the reputation of being husband and wife in the community where they lived; others testified that the plaintiff was known as the decedent's housekeeper; and still others testified as to admissions of the plaintiff that she was not the decedent's wife but his housekeeper. The record indicates that during all the time plaintiff was in decedent's home she retained and used her name of Mable Brawley. This is evidenced by defendants' documentary exhibits "E" and "I," one the bank account of plaintiff and the other the hospital admis-

sion card at the time of her hospitalization. The decedent in his business transactions failed to recognize plaintiff as his wife as evidenced by defendants' exhibit "A," it being a deed for real property executed by decedent as an "unmarried man."

While this court readily agrees with counsel for plaintiff that if, as contended by plaintiff, a few days after she entered the Wolf home she and the decedent entered into a common-law marriage, complying with all the necessary elements therefor, then neither nor both could thereafter abrogate or nullify the same before death other than according to law, yet in determining the relationship existing between these parties during all of these years this documentary evidence carries great weight and in the absence of a satisfactory explanation therefor it is most conclusive. Especially is this true in reference to defendants' exhibit "G" which, because of its importance in view of the whole record and the contention of the defense in this case, we quote:

"Settlement for labor.

"Amesville, Ohio. July 24, 1944.

"Ted H. Wolf is hereby paying Mabel Brawley the sum of seven hundred eighty dollars ($780), the receipt of which is acknowledged by Mabel Brawley, for settlement in full for services rendered for labor to this date, July 24, 1944.

"Witness

"F. L. Thomas

"Ted H. Wolf

"Mable Brawley"

That exhibit corroborates many of the witnesses who testified that the relationship of plaintiff to the decedent in the community and circle in which they moved was that of housekeeper. Whether any other

relationship that may have existed was the honorable institution of marriage, even though by common-law method, the plaintiff was called upon to prove by clear and convincing evidence.

The law which the trial court was called upon to apply to the facts in this case is found reaffirmed in *Markley* v. *Hudson,* 143 Ohio St., 163, 54 N. E. (2d), 304, the syllabus of which is:

"1. An agreement to marry *in praesenti,* made by parties competent to contract, accompanied and followed by cohabitation, as husband and wife, with the result that they are treated and reputed as husband and wife in the community in which they reside, constitutes a common-law marriage.

"2. While such agreement to marry *in praesenti* must be proved by clear and convincing evidence, it may be established by proof of the acts, declarations and conduct of the parties and their recognized status in the community in which they reside."

In applying this rule, the following admonition set forth in the case of *In re Estate of Redman,* 135 Ohio St., 554, 558, 21 N. E. (2d), 659, should be kept in mind:

"So-called common-law marriage contravenes public policy and should not be accorded any favor; indeed, it is quite generally condemned. It is well settled in Ohio that to establish a common-law marriage, all the essential elements of such a relationship must be shown by clear and convincing evidence. The statutes of Ohio contain definite regulations and requirements and prescribe rigid standards to which applicants for marriage license must conform. While these statutory provisions do not of themselves specifically prohibit marriage without the formalities enumerated by those provisions, such informal mar-

riages are seldom recognized and are held valid by courts only to protect the rights of innocent persons."

When the evidence in the instant case is analyzed, under the rules hereinabove set forth, it cannot be said that the plaintiff established a common-law marriage with the decedent by clear and convincing evidence. Therefore, if no error intervened prejudicial to the plaintiff, the trial court was correct in its finding and judgment.

In addition to the weight, sufficiency and admissibility of the evidence, it is earnestly contended by the plaintiff that the trial court committed prejudicial error, first, in denying plaintiff the right of trial by jury and, second, in refusing plaintiff the right to testify to facts establishing her common-law marriage with decedent.

Early in this case, and before trial, plaintiff filed a written request for a trial by jury which was denied by the trial court and exceptions saved. Counsel for plaintiff are frank in stating that they have been unable to find conclusive authority one way or the other touching on this claimed error. Neither have counsel for the defendants been able to discover any authoritative pronouncement thereon. All counsel, however, have endeavored to aid this court by giving it the benefit of their reasoning from certain definite premises, which is appreciated. It is plaintiff's contention that she by her petition sought an order determining her right to decedent's property, basing the same upon her claim that she is decedent's surviving spouse; that the trial court adjudicated and determined the aliquot ownership of the parties to this action in the property of the decedent; and that by such judgment plaintiff's right to recover the property was denied. Therefore, plaintiff claims the right to trial by jury by reason of

Section 11379, General Code, wherein it is provided, among other things, that "issues of fact arising in actions for the recovery of money only, or specific real or personal property, shall be tried by a jury, unless a jury trial be waived, or a reference be ordered * * *."

That the court in the instant case under the pleadings had power to make a finding relative to the interest each of the next of kin had in the decedent's estate in addition to determining the next of kin is clear from the statutes authorizing the determination of heirship and has been so held by the Court of Appeals of the First Appellate District, in the case of *Speidel, Admr., v. Schaller,* 73 Ohio App., 141, 55 N. E. (2d), 346.

The pertinent part of Section 10509-95, General Code, so far as the same applies to the instant case, reads:

"Whenever property passes by the laws of intestate succession, * * * proceedings may be had in the Probate Court to determine the persons entitled to such property."

Section 10509-96, General Code, provides for the filing of a petition, the contents thereof and the parties defendant. The hearing thereon is provided for in Section 10509-99, General Code, which reads:

"At the time assigned for the hearing, or at any time to which said hearing may be adjourned, the court may hear proof taken by commission, or by witnesses produced in open court, of the facts set forth in the petition, and shall, if satisfied from the evidence, find and adjudge who are or were the heirs or next of kin of the decedent, and entitled by law of this state to inherit the estate of the deceased * * *."

The following section makes provision for other interested parties to file the petition in lieu of the ad-

ministrator or executor which procedure was followed in the instant case. The last section of the act to determine heirship, being Section 10509-101, General Code, authorizes the fiduciary to make final distribution of an estate in accordance with the finding and order of the court.

Sections 10509-95, General Code, to and including Section 10509-101, General Code, *supra,* setting forth the proceedings to determine heirship, were first enacted effective January 1, 1932, with some minor amendments, effective September 2, 1935.

The purpose and intent of "The Determination of Heirship Act" is to make certain by court order the persons entitled to the estate of a decedent. Prior to its enactment there was nothing to indicate the heirs or next of kin except the application for appointment; if the information contained therein was incomplete or inaccurate the administrator or fiduciary made distribution at his peril. Under the law as it now stands the Probate Court has the power to determine the persons entitled to the estate and when this is done the one having the responsibility for the final distribution, when the finding and order of the court is followed, is discharged together with his surety from liability arising from such determined interest, and the title to any property passing thereby is free from such determined interest.

This is a wholesome act and one which many other states have had for quite sometime. Its purpose is not the recovery of money or specific real or personal property. Of course, the recovery of money or specific real or personal property may be the ultimate result in the final distribution of the estate to those found entitled to participate therein, but that is the shadow and not the substance of the act.

Therefore in the opinion of this court, Section 11379, General Code, hereinabove set out and providing for a jury trial in certain instances, has no application here.

The basic jurisdiction of the Probate Court is found in Section 8, Article IV of the Constitution of Ohio, wherein, among other things, it clothes that court with jurisdiction in probate and testamentary matters, the appointment of administrators and the settlement of their accounts and provides for such other jurisdiction as may be given by law.

Under that power, the Legislature has enacted Section 10501-53, General Code, specifically granting and separately stating and numbering those matters of which the Probate Court has jurisdiction and stating that such jurisdiction shall be exclusive unless otherwise provided by law. The third provision authorizes the court to direct and control the conduct, and settle the accounts, of executors and administrators, and order the distribution of estates. The last paragraph of that section clothes the Probate Court with plenary power at law and in equity fully to dispose of any matter properly before the court, unless the power is expressly otherwise limited or denied by statute.

There can be no question that the Probate Court had exclusive jurisdiction in the instant case. Therefore, what provision, if any, is made for a jury trial under such circumstances? In *In re Estate of Blue*, 67 Ohio App., 37, 32 N. E. (2d), 499, the court, in determining whether a party was entitled to a jury trial growing out of exceptions to the schedule of debts and the final account, called attention to the fact that under the practice prevailing prior to the creation of probate courts persons interested in the estate of a decedent either as creditors or heirs had no right to trial by a

jury of their claims against or interest in such estate. The court commented further that, under the constitutional provision conferring jurisdiction on the Probate Court, no such right exists except as it may be conferred by statute. In the case of *Brown, Exr.,* v. *Reed,* 56 Ohio St., 264, 46 N. E., 982, the court, on page 270, in discussing whether a party in an action involving an exception to an executor's account had been denied his constitutional right to the intervention of a jury, said:

"But the Constitution preserves the right to trial by jury in those cases only where it existed previously to its adoption. Both before and since the adoption of the Constitution it has been usual to call executors and other trustees to account in courts having equity or probate jurisdiction, and without the intervention of a jury to determine any question affecting the state of their accounts."

This court is unable to discern any substantial difference in the right accruing to a litigant in the Probate Court in a matter involving the accounting from that of the determination of heirship wherein the important question is the status of the claimant relative to decedent's estate. Neither the Constitution requiring nor the Legislature providing for a jury trial under such circumstances as here exists, we are forced to the conclusion that plaintiff was not entitled to a jury trial, and that Section 10501-32, General Code, found under 'Procedure in Probate Court,' is applicable. That section reads:

"Unless otherwise provided by law, all questions of fact shall be determined by the probate judge, unless, in his discretion, he orders them to be tried by a jury, or referred, as provided herein."

Plaintiff insists that it was prejudicial error on the

part of the court in not permitting the plaintiff to testify as to facts establishing her common-law marriage to the decedent, Ted H. Wolf. Plaintiff was called as a witness and was permitted to testify to certain matters both before and after the death of the decedent as well as to testify in rebuttal. In the main, plaintiff's testimony relative to the marriage contract, although proffered, was rejected by the court on objection being made by counsel for the defense that plaintiff was incompetent to testify by virtue of that part of Section 11495, General Code, where provision is made that a party shall not testify when the adverse party is an administrator or claims or defends as an heir of a deceased person. The written opinion of the trial court sets forth and analyzes in detail the proffered testimony which had been ruled out as inadmissible.

The trial court in rejecting that testimony relied on the case of *In Re Estate of Goettge,* 32 Ohio Law Abs., 620, in the Probate Court of Tuscawaras' county, wherein it was held that under Section 11495, General Code, a woman who claims to be the common-law wife of a deceased person, and as such entitled to property owned by him, is incompetent to testify to any facts tending to establish the marriage relation between her and the deceased in a proceeding where such alleged wife is a party.

In the 1943 Cumulative Supplement to 26 to 43 Ohio Jurisprudence, 4397, in commenting that in a proceeding for appointment as administrator by an alleged common-law widow, petitioner may not testify as to the marriage by reason of Section 11495, General Code, as against the objection of an heir at law of decedent and citing the *Goettge case, supra,* the statement is made that that case was affirmed by the Court

of Appeals, December 11, 1940. However, we have been unable to find the Court of Appeals opinion if it was reported and therefore cannot ascertain whether this particular point was settled, because in that case, as in the instant case, the trial court after ruling out the testimony of the alleged common-law widow stated in substance that this proffered testimony had been considered but without effect.

In *Catlett* v. *Chestnut, Exr.*, 107 Fla., 498, 146 So., 241, 91 A. L. R., 212, paragraph 17 of the A. L. R. headnotes states:

"A woman claiming a widow's share in a decedent's estate is disqualified by interest to testify as to facts establishing her marriage to the decedent, under a statute excluding interested persons from testifying in regard to any transaction with a person since deceased as against his personal representative or persons claiming through him unless testimony as to the transaction is given by the adverse party."

In paragraph 18 of the same headnotes, it is said:

"An alleged common-law marriage with a person since deceased is a 'transaction,' within a statute," such as here under consideration.

The Supreme Court of Kansas, in the case of *Shorten* v. *Judd*, 56 Kan., 43, 42 P., 337, 54 Am. St. Rep., 587, reversed the judgment of the lower court, wherein a mother who was united in interest with her son attempted to establish a common-law marriage and therefore his legitimacy, because the mother had been allowed to testify as to the common-law contract even though she later in the case renounced any interest in the estate, the court saying on page 47:

"It would not do to allow her [the alleged common law widow] to experiment with the double claim in behalf of herself and her son until the close of the evi-

dence, and then make her incompetent testimony competent for her son by withdrawing her own claim. On account of this error the judgment must be reversed; but, as Mrs. Mott has now disclaimed any interest, she will be a competent witness as to the alleged marriage on the next trial." See, also, paragraph two of the syllabus.

It is interesting to note on page 46 of the foregoing case, that it was stated by Martin, C. J.:

"It is virtually conceded in the briefs of defendant in error John Judd that Sadie Runkle Mott [the alleged common law widow] was incompetent, under Section 322 of the Code [similar to Section 11495 of the Ohio Code] to testify as to the transaction or communication with William Judd [the alleged common law husband] relied on as proof of the marriage; but it is claimed that the error was cured by the renunciation made on her behalf."

Under a statute similar to that of Ohio, the Supreme Court of Illinois, in the case of *In re Estate of Maher,* 210 Ill., 160, 71 N. E., 438, held in the third paragraph of the syllabus:

"A woman whose claim as being the lawful widow is denied by others having or asserting interests, as heirs, in the estate of her alleged husband, is incompetent to testify to the fact of her marriage in a proceeding in which she seeks, as distributee, a portion of all his personal property, until her status as a widow has been established by the adjudication of a competent court."

In discussing that point, in the body of the opinion, the court said on pages 169, 170:

"The person who in this cause seeks to establish the fact that she was the wife of the deceased at the time of his death, if she testify, is testifying against the

heirs of the deceased, and to do that she is incompetent. The theory of the statute is, that as the mouth of the deceased is closed by death, the mouth of the living who asserts a claim against the dead shall be closed by law.''

The court then pointed out the danger of permitting such testimony and the power that would accrue to one claiming such marital status with a decedent, and said that it is precisely such an evil that the Legislature intended to prevent by the enactment of the statute.

The majority rule throughout the various jurisdictions is set forth in 28 R. C. L., 514, as follows:

''It has been held in a number of cases that where a woman claims to have been the wife of a deceased person, and as such to be entitled to property owned by him, she is incompetent to testify to any facts tending *to establish the existence of the marriage relation between her and the deceased.''* (Emphasis supplied.)

This is an adverse proceeding and it is our conclusion that the plaintiff, Mable Brawley, was not a competent witness to testify, over objection, as to facts tending to establish her alleged common-law marriage to the decedent, Ted H. Wolf, by virtue of Section 11495, General Code, the adverse parties defending not only as administrator but as heirs at law, and none of the exceptions enumerated in that section applying.

No innocent person is involved in this case, its sole purpose is to establish the right of inheritance on the part of plaintiff, and public policy as well as the law demands that she be held to the strict rules of evidence and that degree of proof necessary to establish her right. Plaintiff has failed to do this by evidence

that is clear and convincing, and, there being no error prejudicial to her, the judgment must be affirmed.

*Judgment affirmed.*

GILLEN, P. J., and McCURDY, J., concur.