**LYNCH, Admr., Plaintiff-Appellee, v. ROMAS, Defendant-Appellant, and ROMASCO et, Defendants-Appellees.**

Ohio Appeals, Second District, Franklin County.

No. 5373.   Decided March 22, 1956.

Lynch & Rosenberry, Edward F. Lynch, of Counsel, Columbus, for Administrator, plaintiff-appellee.

Charles M. Rosenberry, Jr., Columbus, for defendant-appellant, Mary B. Romas.

Lurie & Gifford, Estel O. Gifford, of Counsel, Columbus, for defendants-appellees, Anthony Romasco and George Romasco.

(DEEDS, J, of the Sixth District, sitting by designation in the Second District.)

## OPINION

By DEEDS, J.

This appeal on questions of law is from a judgment of the Probate Court of Franklin County in an action by the appellee Edward F. Lynch as administrator, pursuant to §§2123.01 and 2123.02 R. C., seeking a determination of the heirs and their interests in the estate of the decedent, Samuel J. Romas.

The defendant-appellant, Mary B. Romas, claimed and alleged in her answer to the petition of the administrator in the Probate Court that she was the surviving spouse of the decedent by virtue of a common law marriage, and it is conceded that defendants-appellees, Anthony Romasco and George Romasco, are adult sons of the decedent.

In our view of the record now before us for review, the question determinative on this appeal is whether the defendant-appellant, Mary B. Romas, was prohibited from testifying when objection was made by the sons as heirs of the decedent, pursuant to §2317.03 R. C., which section provides, in part, as follows:

"A party shall not testify when the adverse party is the guardian or trustee of either a deaf and dumb or an insane person or of a child of a deceased person, or is an executor, or administrator, or claims or defends as heir, grantee, assignee, devise, or legatee of a deceased person," etc.

It is not contended that the appellant Mary B. Romas can be considered as coming within any of the exceptions provided in the foregoing section of the Revised Code, but it is urged that she should be excepted from the disqualification, notwithstanding the Legislature did not provide that a person claiming to be the common law surviving spouse should be excepted and therefore be considered competent to testify.

The pertinent sections of the Revised Code pursuant to which the appellee as administrator of the estate of Samuel J. Romas commenced the proceeding and in which the judgment of the Probate Court now before this court for review was entered, are as follows:

"Sec. 2123.01 R. C. When Proceedings to Determine Heirship may be had.

"Whenever property passes by the laws of intestate succession, or under a will to a beneficiary not named in such will, proceedings may be had in the probate court to determine the persons entitled to such property."

"Sec. 2123.02 R. C. Petition; defendants.

"In a situation described in §2123.01 R. C., the executor or administrator may file in the probate court of the county where the estate is being administered a petition signed by such executor or administrator or his attorney, which petition shall be verified. The surviving spouse and the legatees and devisees, or the heirs and distributees of the decedent, including those whose names are unknown, shall be made parties defendant. The petition shall contain a concise statement of the pertinent facts and shall conclude with a prayer for the determination of the heirs and distributees of such decedent or of the devisees or

legatees not named in the will and their respective interests in the estate."

"Sec. 2123.05 R. C.  Finding and Order

"At the time assigned for the hearing of a proceeding set forth under §2123.01 R. C., or at any time to which said hearing may be adjourned, the probate court may hear proof taken by commission, or by witnesses produced in open court, of the facts set forth in the petition, and shall, if satisfied from the evidence, find and adjudge who are or were the heirs or next of kin of the decedent, and entitled by the laws of this state to inherit the estate of the deceased, or the devisees or legatees named or unnamed in the will, which finding and adjudication shall be entered on the journal of the court, which entry, or a certified copy thereof, shall be prima facie evidence of the facts therein found."

It is the contention of counsel for Mary B. Romas and also the administrator, that the claimed interest of Mary B. Romas, as surviving spouse, is not adverse to the administrator or the estate of the decedent, and also that her claim is not adverse to the interests of the sons of the decedent as heirs of the estate, notwithstanding as the surviving spouse, if established as such, she would deprive the heirs of a substantial portion of the estate.

In support of their contention, the administrator and counsel for Mary B. Romas rely mainly on the announcement of the Probate Court of Franklin County in Eagleson, Admr. v. McKee, et al., decided November 18, 1939, 33 Abs 33, wherein it is stated in the opinion by McClelland, J., as follows:

"At the trial of this case, which consumed a portion of several days, William S. McKee was offered as a witness. Counsel for the daughters of Mrs. McKee objected to the testimony of Mr. McKee, alleging he was incompetent as a witness by virtue of the provisions of §11495 GC. This question has caused the court a considerable degree of difficulty, and it seems that if the statute were strictly enforced, Mr. McKee would be an incompetent witness.  But, upon an examination of the cases in which the validity of a common law marriage was in question, the alleged surviving spouse was permitted to testify.  Without going into a discussion of the various authorities cited, we will simply announce our conclusion, and that is this court feels that the alleged surviving spouse is competent to testify as to all facts supporting the various elements necessary to constitute a valid common law marriage.  The marriage relationship is not presumed as a matter of law, but it must be proven, and, until it is proven, it is our opinion that the surviving spouse is not precluded from testifying by virtue of the above named statute.

"We therefore hold that Mr. McKee was a competent witness to testify as to all facts tending to support his contention that a valid common law marriage was consummated between the parties."

The administrator and counsel for Mary B. Romas also emphasize and urge in support of their contention, a decision also rendered by Judge McClelland in the Probate Court of Franklin County, in O'Shaughnessy, Admr. of the Estate of Thomas C. Walsh, deceased, v. Stofft, defendants, decided October 20, 1953, 67 Abs 389.

It should be noted in our view, that the witness Maizie Walsh Stofft

whose testimony was sought to be excluded on the ground of her incompetency as a witness in the Walsh estate, supra, was claiming an interest in the estate as the sister of the decedent and therefore as an heir of the decedent, who died intestate.

It is significant in the view of this court that the decision of Judge McClelland in the Probate Court in O'Shaughnessy as administrator of the Walsh estate, supra, followed by a number of years the decision by the same court in Eagleson, Admr. supra, and that in the later decision, the learned Probate Judge made reference to and approved the holding of the Court of Appeals in the case of **Brawley, appellant, v. Thomas, Admr., et al., appellees, 82 Oh Ap 400.**

The Probate Judge stating in the opinion in O'Shaughnessy, Admr., supra, in reference to the Brawley case, supra, as follows:

"In our examination of the law and the court decisions construing same, we find that the purpose of the statute is to maintain mutuality between the parties. In this case certain persons claim to be heirs of the decedent. One claims to be the sole heir and impliedly the other defendants claim to be heirs of the decedent. Their interests are not adverse to each other. The gist of the action is to determine who can prove that they come within the classification set forth by the statute of descent and distribution. It is our opinion that any heir can testify for the reason that his claim is not adverse to the estate, nor is his claim adverse to any other heir.

"Our attention has been called to the case **Brawley, appellant, v. Thomas, Admr. et al., appellees, 82 Oh Ap p. 400,** in which case the court held that where the petitioner claims to be the common law wife of the decedent and the adverse parties defend as heirs and administrator of the estate of decedent, the petitioner is incompetent to testify, over objection, as to facts tending to establish the alleged common law marriage. In that case a certain woman claimed to be an heir by virtue of an alleged marriage to the decedent. That claim, if sustained, of course, would reduce the value of the interests distributable to the heirs, and therefore would render the parties adverse to each other. In the present case there is no attempt to reduce the value of the estate. The only question in this estate is to whom or between whom the estate should be distributed. By permitting all the heirs to testify. no one can be injured and we are serving the cardinal purpose of the statute, which is to put all witnesses upon the same basis."

We do not consider that the later announcement of Judge McClelland of the Probate Court of Franklin County supports the contention of the administrator and counsel for Mary B. Romas that Mary B. Romas making claims as the surviving spouse was not an adverse party to the heirs and the administrator, and therefore was not disqualified from testifying in this proceeding in the Probate Court.

It is stated in the 2nd proposition of the syllabus in Brawley, appellant, v. Thomas, Admr., et al., appellees, supra:

"2. In such a proceeding, where the petitioner claims to be the common law wife of the decedent, and the adverse parties defend as heirs and administrator of the estate of decedent, the petitioner is in-

competent to testify, over objection, as to facts tending to establish the alleged common law marriage."

In the very forceful opinion written by the late Honorable Judge Metcalf in the Brawley case, supra, the question of the adverse interest of one claiming an interest by reason of a common law marriage is ably analyzed with citations and announcements by the courts of last resort in a number of the other States in the nation, in support of the conclusion reached that a party claiming as a common law surviving spouse is not competent to testify over the objection of the heirs. It is considered appropriate therefore to quote quite fully from the opinion of Judge Metcalf in the Brawley case, supra, as follows:

"The trial court in rejecting that testimony relied on the case of **In re Estate of Goettge, 32 Abs 620,** in the Probate Court of Tuscarawas County, wherein it was held that under §11495 GC, a woman who claims to be the common-law wife of a deceased person, and as such entitled to property owned by him, is incompetent to testify to any facts tending to establish the marriage relation between her and the deceased in a proceeding where such alleged wife is a party.

"In the 1943 Cumulative Supplement to 26 to **43 O. Jur.,** 4397, in commenting that in a proceeding for appointment as administrator by an alleged common-law widow, petitioner may not testify as to the marriage by reason of §11495 GC, as against the objection of an heir at law of decedent and citing the Goettge case, supra, the statement is made that that case was affirmed by the Court of Appeals, December 11, 1940. However, we have been unable to find the Court of Appeals opinion if it was reported and therefore cannot ascertain whether this particular point was settled, because in that case, as in the instant case, the trial court after ruling out the testimony of the alleged common-law widow stated in substance that this proffered testimony had been considered but without effect.

"In Catlett v. Chestnut, Exr., 107 Fla., 498, 146 So., 241, 91 A. L. R., 212, Paragraph 17 of the A. L. R. headnotes states:

"'A woman claiming a widow's share in a decedent's estate is disqualified by interest to testify as to facts establishing her marriage to the decedent, under a statute excluding interested persons from testifying in regard to any transaction with a person since deceased as against his personal representative or persons claiming through him unless testimony as to the transaction is given by the adverse party.'

"In paragraph 18 of the same headnotes, it is said:

"'An alleged common-law marriage with a person since deceased is a "transaction," within a statute,' such as here under consideration.

"The Supreme Court of Kansas, in the case of Shorten v. Judd, 56 Kan., 43, 42 P., 337, 54 AM. St. Rep., 587, reversed the judgment of the lower court, wherein a mother who was united in interest with her son attempted to establish a common law marriage and therefore his legitimacy, because the mother had been allowed to testify as to the common-law contract even though she later in the case renounced any interest in the estate, the court saying on page 47:

"'It would not do to allow her (the alleged common law widow) to experiment with the double claim in behalf of herself and her son until

the close of the evidence and then make her incompetent testimony competent for her son by withdrawing her own claim. On account of this error the judgment must be reversed; but, as Mrs. Mott has now disclaimed any interest, she will be a competent witness as to the alleged marriage on the next trial.' See also, paragraph two of the syllabus.

"It is interesting to note on page 46 of the foregoing case, that it was stated by Martin, C. J.:

" 'It is virtually conceded in the briefs of defendant in error John Judd that Sadie Runkle Mott (the alleged common-law widow) was incompetent, under Section 322 of the Code (similar to §11495 GC) to testify as to the transaction or communication with William Judd (the alleged common-law husband) relied on as proof of the marriage; but it is claimed that the error was cured by the renunciation made on her behalf.'

"Under a statute similar to that of Ohio, the Supreme Court of Illinois, in the case of In re Estate of Maher, 210 Ill., 160, 71 N. E., 438, held in the third paragraph of the syllabus:

" 'A woman whose claim as being the lawful widow is denied by others having or asserting interests, as heirs, in the estate of her alleged husband, is incompetent to testify to the fact of her marriage in a proceeding in which she seeks, as distributee, a portion of all his personal property, until her status as a widow has been established by the adjudication of a competent court.'

"In discussing that point, in the body of the opinion, the court said on pages 169, 170:

" 'The person who in this cause seeks to establish the fact that she was the wife of the deceased at the time of his death, if she testify, is testifying against the heirs of the deceased, and to do that she is incompetent. The theory of the statute is, that as the mouth of the deceased is closed by death, the mouth of the living who asserts a claim against the dead shall be closed by law.'

"The court then pointed out the danger of permitting such testimony and the power that would accrue to one claiming such marital status with a decedent, and said that it is precisely such an evil that the Legislature intended to prevent by the enactment of the statute.

"The majority rule throughout the various jurisdictions is set forth in 28 R. C. L., 514, as follows:

" 'It has been held in a number of cases that where a woman claims to have been the wife of a deceased person, and as such to be entitled to property owned by him, she is incompetent to testify to any facts tending to establish the existence of the marriage relation between her and the deceased.'

"This is an adverse proceeding and it is our conclusion that the plaintiff, Mable Brawley, was not a competent witness to testify. over objection, as to facts tending to establish her alleged common-law marriage to the decedent, Ted H. Wolfe, by virtue of §11495 GC, the adverse parties defending not only as administrator but as heirs at law, and none of the exceptions enumerated in that section applying."

It is also considered by this court that the decision of the Court of Appeals for Richland County in the case of **Dibble, appellant, v. Dibble,**

Admx., et al., appellees, 88 Oh Ap 490, is also persuasive and must be considered as being highly pertinent in a determination of the issue under consideration here.

It being stated in the syllabus in Dibble v. Dibble, supra:

"1. In an action to determine heirship, wherein the plaintiff claims to be the surviving spouse of the decedent by reason of a common-law marriage, and the adverse parties defend as heirs and administratrix with the will annexed of the decedent's estate, the plaintiff may not, over the objection of the defending administratrix, testify to facts tending to establish the existence of the claimed common-law marriage. (Sec. 11495 GC.)"

In the opinion in the Dibble case, it is stated:

"The record shows that the evidence in this case is undisputed, leaving only questions of law for decision. The plaintiff offered herself as a witness, but the court, upon objection of Jewell G. Dibble, personally and as administratrix, ruled that she was incompetent to testify by reason of the inhibitions of §11495 GC. Thereupon her testimony was proffered for the record in detail and at length as to the circumstances of her marriage with the decedent. This action is the basis of the first assignment of error and it seems logical to consider it now. No other evidence encompassed by the proffered testimony was produced as to a ceremonial marriage, it being claimed by counsel that none was available.

"The case of Brawley v. Thomas, Admr., 82 Oh Ap 400, 81 N. E. 2nd, 719, cited by appellee Jewell G. Dibble, is in direct point. The syllabus of that case is as follows:

" '1. In a proceeding for determination of heirship (§10509-95, et seq., GC), the petitioner is not entitled to a jury trial.

" '2. In such a proceeding, where the petitioner claims to be the common-law wife of the decedent and the adverse parties defend as heirs and administrator of the estate of decedent, the petitioner is incompetent to testify, over objection, as to facts tending to establish the alleged common law marriage.'

"The facts are similar. A motion to certify the record of that case to the Supreme Court was made and overruled. Appellant contends that decision is wrong under the rule of necessity and by virtue of the pronouncements of the Supreme Court in the case of Smith v. Barrick, 151 Oh St 201, 85 N. E. 2nd, 101. We are not persuaded that the latter case is in direct point.

"In the case of Markley v. Hudson, 143 Oh St 163, 54 N. E. 2nd, 304, the court at page 169 used this language: 'Unfortunately, neither of the parties concerned was able to testify, the voice of William T. Markley having been stilled in death and that of Mrs. Markley through mental incompetency.'

"Possibly a fair inference from this language would be that if Mrs. Markley had not been mentally incompetent she could have testified. However, that question was neither raised nor directly determined by the court.

"In view of the fact that the question was directly raised and decided

in the Brawley case, supra, which case the Supreme Court refused to admit, and since the facts in that case are very similar to the facts in the instant case, upon the reasoning contained in that case we are constrained to hold that the plaintiff's testimony as to the alleged marriage was not competent, and that the trial court did not err in so determining."

We are therefore impelled from the standpoint of reason and the greater weight of the decisions of the courts to find and determine that the Probate Court was not in error in ruling that Mary B. Romas was incompetent to testify in this proceeding.

Therefore, considering the evidence in the record, excluding the testimony of Mary B. Romas, we find from the testimony of several witnesses that the decedent and Mary B. Romas had lived together for a number of years and were reputed and treated as husband and wife in the community and at social gatherings and also among their relatives, but we are unable to reach the conclusion that the proof attained to that state of being clear and convincing as required by the law of the State as announced by the Supreme Court.

The established rule in this State and also the reasons for the rule were stated by the Supreme Court in **In re Estate of Redman: Hiland, appellee, v. State of Ohio, appellant, 135 Oh St 558,** as follows:

"By the Court: The sole question presented in this case is whether there was a common-law marriage between the parties. The essential elements of a common-law marriage in this state were announced in the case of **Umbenhower v. Labus, 85 Oh St 238, 97 N. E., 832.** The following essential requirements for such a marriage are stated in the syllabus of that case:

" 'An agreement of marriage in praesenti when made by parties competent to contract, accompanied and followed by cohabitation as husband and wife, they being so treated and reputed in the community and circle in which they move, establishes a valid marriage at common law, and a child of such marriage is legitimate and may inherit from the father.'

"So-called common-law marriage contravenes public policy and should not be accorded any favor, indeed, it is quite generally condemned. It is well settled in Ohio that to establish a common-law marriage, all the essential elements of such a relationship must be shown by clear and convincing evidence. The statutes of Ohio contain definite regulations and requirements and prescribe rigid standards to which applicants for marriage license must conform. While these statutory provisions do not of themselves specifically prohibit marriage without the formalities enumerated by those provisions, such informal marriages are seldom recognized and are held valid by courts only to protect the rights of innocent persons. In the Umbenhower case, supra, the legitmacy of a child was involved and was an important factor in the decision of that case. Even in such cases, the essential element of such marriage must be established by the degree of proof stated."

The rule was restated by the Supreme Court in **Markley et al., Appellees, v. Hudson (Markley) et al., appellants, 143 Oh St 163,** appearing in the syllabus as follows:

"1. An agreement to marry in praesenti, made by parties competent to contract, accompanied and followed by cohabitation as husband and wife, with the result that they are treated and reputed as husband and wife in the community in which they reside, constitutes a common-law marriage.

"2. While such agreement to marry in praesenti must be proved by clear and convincing evidence, it may be established by proof of the acts, declarations and conduct of the parties and their recognized status in the community in which they reside."

We note also from the opinion of the court as contended by counsel that the Supreme Court distinguished the Redman case, supra, from the Markley case, supra, for the reason as stated that the proof in the Redman case, supra, required that a distinction be made but the Supreme Court did not undertake to establish a different rule respecting the degree of proof required to establish a common-law marriage relationship.

Therefore, finding no error in the record to the prejudice of the appellant, and also that the determination by the Probate Court is not manifestly against the weight of the evidence, it follows therefore that the judgment of that court is affirmed.

Judgment affirmed and cause remanded.

MILLER, PJ, HORNBECK, J, concur.