**ETTER, Plaintiff, v. VON ASCHEN et, Defendants.**

Probate Court, Miami County.

No. 40165. Decided May 27, 1959.

Forrest L. Blankenship, Troy, for plaintiff.
J. Richard Gaier, Piqua, for defendants.

**OPINION**

By DULL, J.

This is an action for a declaratory judgment. The parties have requested the court to determine whether a certain set of facts and circumstances established an alleged common law marriage or failed to establish such a marriage.

A certain Florence M. Von Aschen, hereinafter referred to as the deceased, died on or about April 1, 1958, leaving a will. The three defendants are adult children of the deceased. The plaintiff is the alleged common law husband and alleged surviving spouse of the deceased. On or about April 19, 1958, the will of the deceased was offered for probate in the Probate Court of Miami County, Ohio, without notice being given to the plaintiff as required by law to be given a surviving spouse. Thereafter, on or about June 27, 1958, the defendant Roger J. Von Aschen, filed an application to be appointed the executor of the estate of the deceased in the same court again without notice being given to the plaintiff. Then the present action was filed in the Probate Court of Miami County, Ohio.

The plaintiff lived in the home of the deceased in Piqua, Ohio, almost continuously from some time in November of 1949, until the death of the deceased. There were no children born of this union. The plaintiff claims that he lived at this residence during this period as the common law husband of the deceased. The defendants claim that the plaintiff during this period lived there only as a boarder and roomer. Thusly is the pivotal question presented: which was he?

One of the leading cases on common law marriage in Ohio is **In re Estate of Redman, 135 Oh St 554.** Therein the court set up the elements of a common law marriage and the degree of proof necessary at **page 558** of the opinion. "The essential elements of a common-law marriage in this state were announced in the case of **Umbenhower v. Labus, 85 Oh St 238,** 97 N. E., 832. The following essential requirements for such a marriage are stated in the syllabus of that case: "An agreement of marriage in praesenti when made by parties competent to contract, accompanied and followed by cohabitation as husband and wife, they being so treated and reputed in the community and circle in which they move, establishes a valid marriage at common law, and a child of such marriage is legitimate and may inherit from the father."

So-called common-law marriage contravenes public policy and should not be accorded any favor; indeed, it is quite generally condemned. It is well settled in Ohio that to establish a common-law marriage, all the essential elements of such a relationship must be shown by clear and convincing evidence."

The later case of **Markley v. Hudson, 143 Oh St 163,** restates the requirements for a common law marriage. The syllabus of the case states: "1. An agreement to marry in praesenti, made by parties competent to contract, accompanied and followed by cohabitation, as husband and wife, with the result that they are treated and reputed as husband and wife in the community in which they reside, constitutes a common-law marriage. 2. While such agreement to marry in praesenti

must be proved by clear and convincing evidence, it may be established by proof of the acts, declarations and conduct of the parties and their recognized status in the community in which they reside."

The plaintiff was not permitted to testify because of the restriction of §2317.03 R. C., the so-called "dead mans" statute which provides: "A party shall not testify when the adverse party is the guardian or trustee of either a deaf and dumb or an insane person or of a child of a deceased person, or is an executor or administrator, or claims or defends as heir, grantee, assignee, devisee, or legatee of a deceased person except: - - -"

This court takes the same position as the court in Lynch v. Romas et al, 74 Abs 1, which is set out in Item 1 of the syllabus: "1. In a proceeding for determination of heirship brought by the administrator wherein the defendants are the children of decedent and one claiming to be the surviving spouse by virtue of a common law marriage, such claimant is an adverse party to the heirs and the administrator and is prohibited from testifying as to facts tending to establish the alleged common law marriage where objection is made by the children as heirs of decedent. (Sec. 2317.03 R. C.)"

There is no dispute in the present action that the plaintiff and the deceased were competent to contract. The deceased was a widow whose husband had died sometime prior to November of 1949. There being no evidence to the contrary, it can be assumed that the first marriage of the deceased was a statutory and ceremonial one. There was no evidence that plaintiff had ever been married before.

Further, the evidence is clear and convincing that plaintiff and deceased cohabited as husband and wife. They lived almost continuously at the same residence in Piqua, Ohio, for a period of approximately twelve years.

But the testimony and evidence are somewhat conflicting as to whether or not the plaintiff and deceased were treated as husband and wife and were reputed to be such in the community of Piqua, Ohio.

Several witnesses testified that plaintiff and deceased were seen often together in the community driving to church or to the grocery or going fishing or to a bingo game. There was testimony that when plaintiff and deceased went to a grocery store plaintiff paid for the groceries and that on several occasions the plaintiff paid the utility bills for the residence where plaintiff and deceased resided. However, there was no testimony that plaintiff actually attended church with the deceased. One witness testified that the deceased treated the plaintiff like she (the witness) treated her own husband: the deceased referred to the plaintiff as "mister" and ate at the same table with plaintiff. But on cross-examination this witness said that she never considered the plaintiff and deceased as husband and wife. One of the exhibits in the case was a posed studio photograph of the plaintiff and deceased which the deceased told one witness that it "might" be her wedding picture. On the back of the picture this same witness identified the letters "W-E-D" from the words "Wed. Picture from Florence." However, she failed to identify such letters as being in the deceased's handwriting. This picture was kept in the residence of the deceased and was seen

on different occasions by several witnesses. Another of the exhibits was a plain gold ring similar to a wedding ring, which the deceased wore. But there was no definite testimony as to who gave it to the deceased or when or where or for what purpose. Another exhibit was a gold ring set with a blue stone similar to an engagement ring which both the deceased and the plaintiff wore at different times. But again, there was no definite evidence as to who gave it to either or when or where or for what purpose. One witness testified that the deceased called plaintiff "Butch" and that she had received cards from them signed "Florence and Butch." But another witness testified that she had received a card from the deceased signed "Florence Von Aschen." Four neighbors of the plaintiff and deceased (one for twenty years and one for fourteen years) testified that they considered plaintiff a boarder and roomer in the residence of the deceased. One witness who rented a room from the deceased in 1949 testified that when plaintiff first came to the residence of the deceased he came as a roomer and that plaintiff and deceased occupied different bedrooms. One witness who did some work for the deceased (and also for the defendants) testified that the deceased told him that plaintiff was a boarder and not her husband. Further, one exhibit, an automobile club insurance policy of the plaintiff named the deceased as the beneficiary as "Florence Von Aschen" referring to her as his landlady. Still further, three exhibits, the income tax returns of the deceased for the years 1955, 1956 and 1957, were made in the name of "Florence Von Aschen." The witness who made out these tax returns testified that she always knew the deceased as "Von Aschen."

The testimony and the evidence as to an agreement of the plaintiff and deceased to marry in praesenti are more conflicting.

There was no direct testimony or evidence of any agreement to marry in praesenti. Much of the testimony and evidence considered as relative to the treatment of the plaintiff and deceased as husband and wife and their reputation as such in the community of Piqua, Ohio, is pertinent to this element of a common law marriage. Especially is this true of the testimony and evidence in connection with the exhibits of the posed studio photograph, the ring similar to a wedding ring and the ring similar to an engagement ring. From such an agreement in praesenti might be inferred. Further, one witness testified that the deceased told her that she couldn't let "the boys" (meaning the defendants) know everything she did because they would then criticize her and cause trouble. From this, too, an agreement in praesenti might be inferred. The living together of the plaintiff and the deceased in the same residence for approximately twelve years, their eating together at the same table, their being seen together at various times and places in the community, the treatment of the plaintiff as her husband by the deceased (in the opinion of one witness) all form some basis in fact from which an agreement in praesenti might be inferred. But the testimony of the four neighbors to the effect that the plaintiff was considered a boarder and roomer of deceased and the declaration of the deceased that she considered the plaintiff a boarder and not her husband creates an inference that no agreement in praesenti was ever

entered into. Further, the fact that the plaintiff named the deceased as Florence Von Aschen in his automobile club insurance policy and referred to her as his landlady again creates an inference of no agreement in praesenti. Still further, the fact that the income tax returns of the deceased were made in the name of Florence Von Aschen creates a definite inference of no agreement in praesenti whatsoever.

Hence, it is the considered opinion of this court that although the parties were competent to contract and cohabited as husband and wife, the evidence falls short of being clear and convincing that they were treated and reputed as husband and wife in the community in which they resided and falls even shorter of being clear and convincing they ever made an agreement to marry in praesenti. As stated by the court in **Brastein v. Sedivy, 78 Abs 481,** on **page 483** of the opinion.

"The evidence of marriage here is not such as would enable the Court to say firmly and with conviction that these people were, or considered themselves to be married. There is entirely too much conflict in the evidence. Too many questions remain unanswered. - - -"

"There was no mutual agreement, in the present, to assume the obligations as well as the privileges, of marriage. The law recognizing common law marriage is provided primarily to protect the innocent. There are no innocent here. Said law should never be used to establish the survivor of such a relationship as a spouse and this Court cannot so use it in this case."

Therefore, it is the finding of this court that no common law marriage existed between the plaintiff and the deceased and that the plaintiff is not the surviving spouse of the deceased.

Counsel for the defendants may prepare a judgment entry accordingly.